PEOPLE v TORREZ

Docket No. 31097. Submitted November 15, 1978, at Lansing.—Decided May 21, 1979. Leave to appeal applied for.

Henry A. Torrez was convicted of delivery of heroin, Saginaw Circuit Court, Eugene Snow Huff, J. The defendant appeals, alleging that 1) reversible error occurred as a result of the prosecutor's failure to reveal to the defendant the existence of perjury charges pending against an informant who was a witness at the defendant's trial, 2) the trial court erred in admitting into evidence testimony by the informant regarding another heroin buy from defendant which occurred after the sale for which the defendant was tried, 3) the 37-day delay between the time of the offense and time of arrest violated due process, and 4) the prosecutor committed reversible error by cross-examining the defendant in a way which intimated that the defendant had been convicted of some prior offense. *Held:*

1. Evidence of a pending perjury charge against the informant could have been used to assist defense counsel in attacking the key witness's credibility. This evidence was material as to the defendant's guilt. The suppressing of this information by the prosecutor after the defendant had requested information concerning charges pending against the informant requires that a new trial be ordered.

2. There was insufficient information in the record to enable the Court of Appeals to conclude that the evidence of the subsequent sale was admissible under the similar acts statute. Unless the prosecution comes forward with sufficient additional detail to justify admission under the statute, this evidence should be excluded upon retrial.

3. The defendant demonstrated no prejudice from the delay

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 225.
[2] 81 Am Jur 2d, Witnesses §§ 663, 666.
[3] 30 Am Jur 2d, Evidence §§ 1080–1087.
[4] 29 Am Jur 2d, Evidence § 298.
[5] 21 Am Jur 2d, Criminal Law §§ 243, 248, 251.
[6] 75 Am Jur 2d, Trial § 269.

between the time of the offense and the time of arrest. There was no violation of due process.

4. There was no reversible error occasioned by the prosecution's question of the defendant asking if he was sure he had a spotless record, which the defendant maintained he had, and the reminder to the defendant that he was under oath.

Reversed and remanded for a new trial.

1. Criminal Law — Evidence — Evidence Favorable to Accused — Suppression of Evidence.

Suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material either to guilt or to punishment and a request for the information is made by the defendant; where no request is made, the prosecutor is under a more limited duty to disclose potentially exculpatory evidence.

2. Witnesses — Criminal Law — Pending Charges — Admissibility — Impeachment.

A criminal defendant is permitted to use evidence of pending charges against a prosecution witness to bring out the witness's bias or interest, if any, affecting the outcome of the case.

3. Witnesses — Criminal Law — Evidence — Credibility of Witnesses — Fair Trial.

Evidence concerning the credibility of a witness is relevant toward insuring that a defendant receives a fair trial.

4. Criminal Law — Evidence — Heroin — Similar Acts — Statutes.

Evidence of a heroin sale by a defendant to an informant subsequent to the sale of heroin to the same informant prior to his arrest for the sale for which the defendant is being tried is not admissible under the similar acts statute where no details of the subsequent sale have been brought out (MCL 768.27; MSA 28.1050).

5. Criminal Law — Delay in Arrest — Prejudice — Due Process — Burden of Proof.

A defendant who seeks a dismissal of charges against him arguing that the delay between the time of the offense and the time of his arrest violated due process must show some prejudice resulting from the delay.

6. Criminal Law — Questioning by Prosecutor — Prior Convictions.

Questioning of a defendant by a prosecutor whereby the prosecu-

tor asked the defendant if he was sure that he had a spotless record and reminded the defendant that he was under oath did not result in reversible error where the questioning was brief and no prejudice could have resulted as the defendant denied having been previously convicted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Michael C. Weiss,* Assistant Prosecuting Attorney, for the people.

*Nicholas Smith,* for defendant on appeal.

Before: CYNAR, P.J., and R. B. BURNS, and M. B. BREIGHNER,* JJ.

CYNAR, P.J. Defendant was charged with delivery of heroin, a violation of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Following a lengthy jury trial in August of 1976, he was found guilty as charged. On November 22, 1976, defendant was sentenced to a term of 10 to 20 years imprisonment. He now appeals as of right.

The prosecution's case was established primarily by the testimony of Alfredo Velasquez, a police informant. On August 26, 1975, Velasquez met with two members of the Michigan State Police to arrange a heroin purchase from defendant. Pursuant to this plan, Velasquez called the LaFamilia restaurant in Saginaw and arranged to meet defendant there later in the day.

Before departing for this meeting Velasquez was strip-searched and his car searched as well. The officers then followed the informant in separate cars to the restaurant. Upon arrival at the restaurant, the officers maintained surveillance over Velasquez, who entered the restaurant and ordered a

_____
*Circuit judge, sitting on the Court of Appeals by assignment.

meal. Once defendant arrived, he and Velasquez departed and drove to the DeLaCruz home in Saginaw. The officers followed the pair, maintaining their surveillance.

Upon arrival at the DeLaCruz home, Velasquez and defendant met with two other persons, identified as Manuel Lozano and Jose DeLaCruz. DeLaCruz entered the house with Velasquez and defendant. At this time, according to Velasquez, defendant sold him a "quarter" of heroin for $350 which had been provided by the police. Defendant denied having participated in such a sale.

After the alleged sale was consummated, Velasquez and defendant returned to the restaurant. Upon emerging from the DeLaCruz home, the informant was again under constant surveillance until a later meeting with the two officers. At this time he turned over the heroin and was strip-searched again. This search revealed no other drugs other than those contained in a tinfoil packet allegedly bought from defendant.

Defendant contends that reversible error occurred as a result of the prosecution's failure to reveal the existence of perjury charges pending against the informant Velasquez at the time of defendant's trial.

The suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is "material either to guilt or to punishment" and a request for the information is made by defendant. *Brady v Maryland,* 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Where no request is made for the information, the prosecutor is under a more limited duty to disclose potentially exculpatory evidence. *United States v Agurs,* 427 US 97, 112; 96 S Ct 2392; 49 L Ed 2d 342 (1976).

The record tends to support defendant's contention that a request for information concerning charges pending against Velasquez was made by defense counsel. A teletype printout of Velasquez's record was provided, but no reference to the perjury charges is contained therein.

The prosecution argues that it had no duty to disclose the pending perjury charges against Velasquez, because such evidence was inadmissible at trial. In support of their position, the prosecution cites *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973), where the Court states:

"We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by pleas or trial."

Although the prohibition noted in *Falkner* is proclaimed in very broad terms, subsequent opinions construing *Falkner* have limited its scope to use of prior arrests for purposes of impeaching the witness's credibility, the use for which they were offered in *Falkner.* See *People v Rappuhn,* 390 Mich 266, 270-271; 212 NW2d 205 (1973), and *People v Sanders,* 394 Mich 439, 440; 231 NW2d 639 (1975). As a result the prohibition in *Falkner* does not apply in the present situation. Although the record does not support the conclusion that any promises regarding these charges were made to Velasquez in return for his testimony against defendant, defense counsel is permitted to use evidence of pending charges to bring out the witness's bias or interest, if any, affecting the outcome of the case. *People v Harrington,* 76 Mich

App 118, 121; 256 NW2d 52 (1977), *People v Sesson,* 45 Mich App 288, 298-302; 206 NW2d 495 (1973), and *People v Crutchfield,* 62 Mich App 149; 233 NW2d 507 (1975).

Under these circumstances we conclude that a violation of the *Brady* rule has occurred. Since the withheld information could have been admitted to assist defense counsel in attacking the key witness's credibility, we conclude that this evidence is material as to guilt. As noted in *People v Reed,* 393 Mich 342, 354; 224 NW2d 867 (1975):

> "[E]vidence concerning the credibility of a witness is relevant toward insuring that defendant receives a fair trial."

Since the evidence in question certainly related to the trustworthiness of Velasquez's testimony, we conclude that its suppression by the prosecution requires that a new trial be ordered.

Although the resolution of the above issue requires a remand for a new trial, we find it necessary to confront three additional issues which may recur on retrial.

Defendant alleges that the trial judge erred in admitting into evidence testimony by Velasquez regarding another heroin buy from defendant, occurring after the sale for which defendant was being tried. No details of the subsequent sale were brought out at trial. Therefore, we are unable to conclude that the evidence was admissible under MCL 768.27; MSA 28.1050, the so-called "similar acts statute". *People v Wilkins,* 82 Mich App 260, 267; 266 NW2d 781 (1978). Unless the prosecution comes forward with sufficient additional detail to justify admission under the statute, evidence of the subsequent heroin sale should be excluded upon retrial.

Defendant argues that the 37-day delay between the time of the offense and the time of arrest violated due process. We disagree. Defendant is unable to demonstrate any prejudice as a result of this delay. *People v Fraker,* 63 Mich App 29, 31; 233 NW2d 878 (1975).

Defendant's final contention is that the prosecutor committed reversible error in his questioning of defendant. Specifically he contends that the prosecution intimated through his questions that defendant had been convicted of some prior offense.[1] However, unlike the situation in *People v Di Paolo,* 366 Mich 394; 115 NW2d 78 (1962), the prosecution's questions here did not refer to a specific crime defendant was alleged to have committed. Rather, he merely asked him if he was sure he had a spotless record and reminded him that he was under oath. The questioning was brief and no prejudice could have resulted as defendant denied having been previously convicted. Therefore, we conclude that under these circumstances, no reversible error occurred. See *People v Moss,* 70 Mich App 18, 34; 245 NW2d 389 (1976) (M. J.

---

[1] The questions went as follows:

"Q *[Mr. Bearinger, Assistant Prosecuting Attorney]* Now, your lawyer—one of your lawyers in his opening statement said you have a clean record. What does clean mean to you?

"A *[defendant]* A Clean record, I guess.

"Q An absolutely spotless—

"A I don't know if it's spotless or not. That I know of, I have never been convicted of anything.

"Q You're under oath?

"A Yes.

"MR. SMITH *[defense counsel]:* Your Honor, I'm going to object, perhaps anticipatorily, but I'd ask the Prosecutor properly phrase the question if he's going to get into the subject matter.

"THE COURT: All right, the Court will ask the Prosecutor to—

"MR. BEARINGER: Your Honor, I think I'll stop at this point. I left something downstairs and by the time I get back it will probably be 1:00 o'clock."

KELLY, J., concurring), *aff'd sub nom People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979).

Reversed and remanded for a new trial.