PEOPLE v HOGAN

Docket No. 78-4171. Submitted October 22, 1980, at Detroit.—Decided
    April 21, 1981. Leave to appeal applied for.

Larrie R. Hogan was convicted of armed robbery and possession
    of a firearm during the commission of a felony, Detroit Record-
    er's Court, Donald L. Hobson, J. He appeals, alleging that the
    trial court erred in failing to deny his motion to exclude
    evidence of his prior convictions, in allowing the prosecution to
    impeach improperly a res gestae witness, in admitting evidence
    which was seized pursuant to an illegal arrest, in instructing
    the jury regarding the felony-firearm charge, and in allowing
    the prosecutor to appeal to the jurors' sympathy for the vic-
    tims. *Held:*

    1. The trial court erred in failing to exercise properly its
    discretion in determining whether or not to exclude evidence of
    defendant's prior convictions. The trial court did not specifi-
    cally indicate that it was exercising its discretion, nor does the
    record support the conclusion that the court was aware that it
    had such discretion. In addition, the record does not reveal that
    the trial court engaged in the necessary balancing of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 29 Am Jur 2d, Evidence §§ 320, 321, 327.
    Permissibility of impeaching credibility of witness by showing for-
        mer conviction, as affected by pendency for appeal from convic-
        tion or motion for new trial. 16 ALR3d 726.
    Construction and application of Rule 609(b) of Federal Rules of
        Evidence, setting time limit on admissibility of evidence of convic-
        tion of crime to attack credibility of witness. 43 ALR Fed 398.
[4] 81 Am Jur 2d, Witnesses § 603.
    Use of prior inconsistent statements for impeachment of testimony
        of witnesses under Rule 613, Federal Rules of Evidence. 40 ALR
        Fed 629.
[5] 81 Am Jur 2d, Witnesses §§ 587-590, 595.
[6-8] 5 Am Jur 2d, Appeal and Error § 553.
    75 Am Jur 2d, Trial § 162.
[7] 75 Am Jur 2d, Trial §§ 906, 907.
[8] 75 Am Jur 2d, Trial § 315.
[9] 21 Am Jur 2d, Criminal Law §§ 525-530, 533.

competing factors involved. Defendant's conviction is reversed and the case is remanded for a new trial.

2. The impeachment of the res gestae witness by introduction of prior inconsistent statements involved the use of hearsay evidence which was not admissible. Upon retrial, the statements should be established more directly and an instruction limiting the use of the statement for the purpose of impeachment would be appropriate.

3. The trial court properly allowed admission of evidence of the res gestae witness's prior arrest which did not result in a conviction to demonstrate the witness's bias in the outcome of the case and motivation to give false testimony.

4. The issue of the admission of evidence seized pursuant to an illegal arrest was not preserved for appeal, no objection having been raised by defendant during trial and no showing of resulting manifest injustice having been made.

5. Review on appeal of the allegation of error in the trial court's instruction to the jury regarding the felony-firearm charge is precluded, no objection having been raised during trial and no showing having been made that the instruction misled the jury, was inadequate, or was inconsistent with substantial justice.

6. Defendant's claim of error regarding an appeal by the prosecutor to the jury's sympathy for the victims was not preserved for appeal, no objection having been raised during trial and no showing of resultant manifest injustice having been made.

7. On remand, defendant's refusal to plead guilty may not be taken into consideration in determining the term of sentence to be imposed.

Reversed and remanded.

1. EVIDENCE — CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — RULES OF EVIDENCE.

Evidence that a defendant has been convicted of a crime may be admitted for the purpose of attacking his credibility where elicited from him or established by public record during cross-examination but only if the crime was punishable by death or imprsonment in excess of one year, the crime involved theft, dishonesty, or false statement and the trial court determines that its probative value outweighs its prejudicial effect (MRE 609).

2. EVIDENCE — CRIMINAL LAW — COURTS — IMPEACHMENT — PRIOR CONVICTIONS — JUDICIAL DISCRETION — APPEAL.

A trial court, in ruling on the admissibility of evidence of a

defendant's prior convictions for the purpose of attacking his credibility, need not state specifically that it is exercising its discretion, where it is clear from the record that the court was aware that it had the discretion to allow or to suppress such evidence, and no error will be found on appeal where a review of the record establishes that the court did not abuse its discretion.

3. CRIMINAL LAW — COURTS — EVIDENCE — PRIOR CONVICTIONS — IMPEACHMENT — JUDICIAL DISCRETION.

A trial court, in exercising its discretion whether or not to allow admission of evidence of a defendant's prior convictions for the purpose of attacking his credibility, must weigh the nature of the prior offense relative to its direct bearing on credibility, whether the prior conviction was for substantially the same conduct for which the defendant is on trial considering whether the offenses are so closely related as to allow the jury to infer the likelihood that the defendants committed the crime charged creating prejudice which outweighs the probative value of the evidence on the issue of credibility and the effect on the decisional process of the defendant's failure to testify out of fear of impeachment in light of any alternative nontestimonial means of presenting a defense.

4. EVIDENCE — WITNESSES — PRIOR INCONSISTENT STATEMENTS — RULES OF EVIDENCE.

A witness may be examined concerning a prior oral statement where its substance and the time, place, and person to whom the statement was made are disclosed, and extrinsic evidence of a witness's prior inconsistent statement is admissible where the witness is afforded an opportunity to explain or deny the inconsistency and the opposing party is afforded an opportunity to interrogate him relative thereto (MRE 613).

5. WITNESSES — PRIOR ARRESTS AND CHARGES — DEMONSTRATION OF BIAS.

No inquiry may be made during the examination or cross-examination of a witness regarding his prior arrests or charges or higher original charges made against him which did not result in a conviction except where such inquiry is used not to directly impeach the witness but to bring out his bias or interest in the outcome of the case.

6. EVIDENCE — ADMISSIBILITY — FAILURE TO OBJECT — APPEAL.

Objection to admission of evidence may not be made for the first time on appeal absent a showing of manifest injustice.

7. APPEAL — JURY INSTRUCTIONS — FAILURE TO OBJECT.

Failure of a defendant to object to a jury instruction in the trial court precludes review on appeal where the instruction, viewed as a whole, did not mislead the jury, was adequate, and was consistent with substantial justice.

8. APPEAL — PROSECUTORIAL COMMENTS — PRESERVING QUESTION.

Failure of a defendant to object to comments by a prosecutor in the trial court precludes review on appeal absent a showing that such preclusion would amount to a miscarriage of justice.

9. CRIMINAL LAW — SENTENCING — GUILTY PLEAS — REFUSAL TO PLEAD.

A defendant's refusal to plead guilty may not be taken into account by a trial court in determining the term of the sentence imposed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael F. Bakaian,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

D. L. SULLIVAN, J. Defendant, Larrie Hogan, was convicted by a jury on August 1, 1978, of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced on August 8, 1978, to from 15 to 25 years in prison for the armed robbery and to two years for the felony-firearm offense. Defendant appeals as of right.

The alleged robbery took place on the night of March 23, 1978, at the residence of Nathaniel

* Circuit judge, sitting on the Court of Appeals by assignment.

Conners in Detroit. Living with Conners were Roscoe Childs, Odessa Thomas, and Conners' grandson, Marcus Buckner. At about 10 p.m., Buckner answered a knock at the door and was confronted by two armed men. One of the men took money from Conners' pocket and then forced him to lie on the bathroom floor. The men ransacked Conners' room, taking about $130, a movie camera, a rifle, and a P-38 pistol. Conners was able to identify defendant as one of the two men. He testified that defendant also took his car keys and warned him, "If you want your grandson to live, don't do anything".

Odessa Thomas was also forced to lie on the bathroom floor while her purse, wallet, and gold watch were taken from her bedroom. Ms. Thomas identified defendant both at a police line-up and at trial. Roscoe Childs testified that he was told to get under his bed as his room was searched. Childs was unable to identify either of the two robbers.

Buckner testified that he has known the defendant since 1974 and that the defendant was not one of the assailants. He stated that the men forced him to drive them off in his grandfather's car. As they pulled away, a red car followed them. Once down the street from the residence, he was told to lie in the back while one of the men drove. At a second location, the men left the car and Buckner walked home. He later led the police to his grandfather's car; a red Chevrolet was found parked nearby.

Walter Shannon, a friend of Nathaniel Conners, was visiting across the street that night when he noticed a strange brown car parked in the alley. He wrote down its license number and later observed it following Conners' auto down the street. The license number was later traced by the police

to a vehicle registered to Linda Walls. Detroit Police Sergeant James Morrison testified that he and another officer went to Walls' apartment, drew their revolvers, and knocked on the door. A male voice asked, "Who's there?" and Morrison replied, "Police officers". Defendant opened the door and stood there holding a P-38 pistol. He backed up, dropped the gun, and was arrested. At the trial, Nathaniel Conners identified the pistol as that taken during the robbery.

The defendant testified that he drove Linda Walls to work at 5:30 p.m. on the evening of March 23 and that he went to bed at 9:30 p.m. The following morning he woke to go to work, and the car was gone. The defendant reported the car as stolen to the police. He also testified that he had taken the pistol from a friend named Robertski on the night following the robbery. One night later, Robertski called to say he was picking up the gun, but when defendant answered a knock on the door five minutes later he was faced instead by the police.

The defendant had two prior convictions, for assault with intent to commit robbery while being armed and for unlawfully using an automobile. After the court briefly reviewed the defendant's record, the following colloquy took place:

"*The Court:* He was convicted of Unlawfully Using an Automobile. Placed on probation with $375.

"*Defendant Hogan:* That was in '74.

"*The Court:* Plus attorney fees.

"3/18/75, according to the conviction sheet, for Robbery Armed in 1975. Given three to twenty in the State Prison at Southern Michigan by Judge Gillis with a plea to Assault with Intent to Rob Being Armed.

"Counsel, Court Rule 609, Michigan Rules of Evidence, indicates that if he has been convicted of a crime

that shall be admitted, and if the crime was punishable by debt *[sic]* or imprisonment in excess of one year, and both of those certainly fall within that category, or regardless of it, if it shows theft, dishonesty, or false statement.

"I think both of those are directly on point. I will deny your Motion, counsel.

*"Mr. Foley [prosecuting attorney]:* Your Honor, I would ask this Court to exercise its discretion in determining whether or not the probative value outweighs the prejudicial.

*"Mr. Garber [defense counsel]:* Under *People versus Jackson—*

*"The Court (interposing):* Yes. I don't think that the prejudicial value would outweigh the probative value.

*"Mr. Garber:* Thank you, Your Honor."

MRE 609 controls the use of prior convictions for impeachment purposes. At the time of the defendant's trial it read, in pertinent part:

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect."

It is apparent that the trial court decided to deny the defendant's motion after determining that the conviction satisfied the requirements of MRE 609(a)(1). The conclusion that prejudice would not outweigh the probative value of the

evidence was a mere afterthought provoked by the prosecutor's request and not an exercise of discretion. Although a trial judge does not specifically have to state that he is exercising his discretion, the record must at least indicate that he was aware that he possessed it. *People v Makidon,* 84 Mich App 287, 289; 269 NW2d 568 (1978). Nonetheless, a true exercise of discretion is necessary with the court balancing the competing factors involved. *People v Crawford,* 83 Mich App 35, 38; 268 NW2d 275 (1978). In *Crawford,* this Court articulated three factors to be weighed:

"(1) the nature of the prior offense (did it involve an offense which directly bears on credibility, such as perjury?), (2) whether it is for substantially the same conduct for which the defendant is on trial (are the offenses so closely related that the danger that the jury will consider the defendant a 'bad man' or infer that because he was previously convicted he likely committed this crime, and therefore create prejudice which outweighs the probative value on the issue of credibility?), and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?)." *Id.,* 39.

The perfunctory comments of the trial court lead us to the conclusion that these factors were not considered. We are persuaded that had the court properly exercised its discretion, the defendant's conviction for assault with intent to commit armed robbery would have been excluded. That offense is nearly identical to that for which defendant was being tried, and it could have been expected to have been highly prejudicial in the

eyes of the jury. Further, the nature of the mis-identification defense posed was such that effective presentation necessitated the defendant's own testimony.

Because the trial judge failed to exercise properly his discretion when called upon to exclude evidence of the defendant's prior convictions, we reverse and remand for a new trial.

Because retrial is possible, we discuss the defendant's other allegations of errors. Initially, defendant contends that the prosecution improperly impeached res gestae witness Marcus Buckner. The prosecution elicited testimony that Buckner had identified the defendant previously and questioned Buckner as to his arrest the day before on a bench warrant. The defendant failed to object in either instance.

MRE 613 provides that a witness may be examined concerning a prior oral statement if its substance and the time, place, and person to whom the statement was made are disclosed. Extrinsic evidence of an inconsistent statement is admissible if the witness is afforded the opportunity to explain or deny and the opposing party is allowed to interrogate him thereon.

After Buckner testified that defendant was not one of the robbers, he was informed by the prosecutor of the time, place, and person to whom he allegedly made a previous statement identifying defendant. Buckner then stated that he did not remember being asked if he knew the robbers or actually telling the officer that he did know them. The questions provided sufficient foundation for the admission of extrinsic evidence of the prior statement. However, the officer who actually took the statement merely testified that he spoke to Buckner and that Buckner stated that he could

identify the men. The prosecutor ultimately elicited the names of defendant and his alleged accomplice from a second officer, who testified that he had seen the names in a preliminary report prepared by his colleague. To the extent the testimony was used to establish that Buckner named the two individuals, it was hearsay in contravention of MRE 801. On retrial, evidence of Buckner's prior statement should be established in a more direct manner. Furthermore, an instruction limiting use of the statement for the purpose of impeachment would be appropriate. *Cf. People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972).

Buckner's credibility was also attacked through questions regarding an arrest on a bench warrant that was issued after he left court unannounced on the first day of trial. That day was consumed in jury selection, and Buckner apparently concluded that he could absent himself until he was needed. He was questioned with regard to the incident:

"*Q.* But you didn't return to this courtroom, did you?

"*A.* No.

"*Q.* Did you get arrested for that?

"*A.* Yes.

"*Q.* When did you get arrested?

"*A.* Sunday night.

"*Q.* Sunday night, so you spent Sunday night in jail?

"*A.* Yes.

"*Q.* And Monday morning?

"*A.* Yes.

"*Q.* And Monday before you came over here to testify, is that correct?

"*A.* What?

"*Q.* And you spent the last night in jail, is that correct?

"*A.* Yes.

"*Q.* Did that make you a little angry?

"*A.* In a way. I believe it wasn't my fault really, you see, cause I ain't never been down here before, and my grandfather told me they been postponed.

"*Q.* It made you a little angry, did it not?

"*A.* Pardon?

"*Q.* It made you a little angry, did it not?

"*A.* No, not really.

"*Q.* You couldn't see your girlfriend, could you?

"*A.* That wouldn't make me angry.

"*Q.* It wouldn't make you angry to have to spend the night in jail?"

In *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973), the Supreme Court set forth a seemingly strict rule forbidding examination regarding prior arrests not yet resulting in convictions:

"We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial." *Id.,* 695.

Nonetheless, an exception is made when the prior arrest is not used to directly impeach the witness but to bring out the witness's bias or interest in the outcome of the case. *People v Torrez,* 90 Mich App 120, 124; 282 NW2d 252 (1979). Most often this will occur when the witness is an accomplice or an informant testifying pursuant to a plea agreement.

Here, the questioning sought to demonstrate Buckner's bias against or, more specifically, hostility toward the prosecution. Because such hostility could provide a motivation for false testimony, the examination regarding his arrest was proper. See Anno: *Impeachment of witness by evidence or*

*inquiry as to arrest, accusation, or prosecution,* 20 ALR2d 1421, 1440-1443. Again, an instruction limiting the jury's use of the information could prevent consideration of the arrest itself as being reflective on Buckner's credibility. *Cf.* CJI 5:2:06.

Defendant also claims that the trial court erred by admitting the P-38 pistol into evidence, contending that its seizure was the product of an illegal arrest. Defendant refers this Court to *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), which prohibits police, absent exigent circumstances, from making nonconsensual entry without a warrant into a suspect's home to effectuate an arrest. However, defendant failed to object to the admission of the pistol below. Absent a showing of manifest injustice, objection to admission of evidence may not be made for the first time on appeal. *People v Alexander,* 72 Mich App 91, 99; 249 NW2d 307 (1976). More importantly, the failure to move to suppress or object has deprived this Court of the information that would have been obtained in an evidentiary hearing. The testimony at trial was inconclusive with regard to whether the officers originally intended to arrest defendant and as to whether their entry was consensual. In the event of retrial, and should defendant desire to exclude the pistol, the appropriate procedural steps should be followed. *Cf. People v Ferguson,* 376 Mich 90; 135 NW2d 357 (1965).

Defendant has also argued that the trial court erred in instructing the jury on the felony-firearm count. Since no objection was made at trial, appellate review is precluded providing that the instruction, viewed as a whole, did not mislead the jury, was adequate, and was not inconsistent with sub-

stantial justice. *People v Murry,* 59 Mich App 555, 560; 229 NW2d 845 (1975). The offense consists of two elements: (1) carrying or possession of a firearm, (2) while committing or attempting to commit a felony. *People v Brintley,* 85 Mich App 714, 719; 272 NW2d 582 (1978). The statute adequately apprised the jury of each element without being misleading. No prejudicial error occurred.

Finally, defendant claims that the prosecutor's appeal to the jurors' sympathy for the three victims constituted error requiring reversal.[1] Because defendant failed to object, appellate review is precluded unless it would cause a miscarriage of justice. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977). Here, the thrust of the argument was that two of the witnesses had an opportunity to observe the defendant and that their credibility should have been weighed against that of Marcus Buckner. Any possible prejudice could have been

[1] During closing argument to the jury, the prosecutor stated:

"That's what this is. This is a court of criminal justice. Although that gentleman is sitting right there, you can't see them, but there are three individuals who are really humiliated, at the time when you're most vulnerable, when you're going to bed, when you're partially undressed. They're not here, but when you go into that jury room, I want you to think about them.

"Think about Mr. Conners. Think about how he was when he was on the witness stand. He came across how—as himself.

"Think about Miss Odessa Thomas in her underwear and a bag on her side and forced to go into the bathroom. What about her? She's sitting here today, too."

"Mr. Roscoe Childs.

"You know something? Hogan never went upstairs, the guy with the rifle went upstairs. That's why he couldn't identify Hogan.

"If you remember, Mr. Conners said 'I didn't see the other guy too well, but I did see Hogan.'

"That's what Odessa Thomas said, too. 'I saw this guy. This is the guy I remember.'

"Now, ladies and gentlemen, defense counsel would have you believe that they're not going to remember the face. If I were to grab your purse now, I'm sure you're going to remember my face, even though it's an exciting event. You're going to remember something like that."

eliminated by a curative instruction had one been requested. *Id.,* 16-17.

In remanding, we remind the trial court that a defendant's refusal to plead guilty may not be taken into account in determining the term of the sentence imposed. *People v Earegood,* 383 Mich 82, 85; 173 NW2d 205 (1970). Certain remarks made by the trial court during sentencing implied that the court was fulfilling a pretrial promise to sentence harshly if the defendant asserted his right to trial.[2]

Reversed and remanded.

---

[2] During defendant's sentencing, the court stated:

*"The Court:* I made an offer to him before I heard the testimony of Nathaniel Conners. Do you recall that?

*"Mr. Garber:* That is correct, your Honor.

*"The Court:* I made an offer to him before I had a chance to listen to Odessa Thomas. Do you recall that?

*"Mr. Garber:* Yes.

*"The Court:* I made an offer to him before I listened to Roscoe Childs.

*"Mr. Garber:* The Court had not heard any of the testimony before the plea negotiations, that is absolutely correct. There was no preliminary examination in this matter, so that the Court did not have the benefit of either.

*"The Court:* That is correct. And at that time I indicated to him that if he was interested in taking a plea that would be one thing, but if I heard the testimony and looked at the demeanor of the witnesses and if the jury found him guilty, based on the information that I had, the amount of time that this Court would sentence him to would be substantial."