607 N.W.2d 91 (1999)
238 Mich. App. 573
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Neto Alan LAYHER, Defendant-Appellant.
Docket No. 208502.
Court of Appeals of Michigan.
Submitted September 15, 1999, at Lansing.
Decided November 19, 1999, at 9:00 a.m.
Released for Publication March 7, 2000.
*93 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, Brian L. Mackie, Prosecuting Attorney, and Lenore M. Ferber, Assistant Prosecuting Attorney, for the people.
State Appellate Defender (by David A. Moran), for the defendant on appeal.
Before: TALBOT, P.J., and FITZGERALD and MARKEY, JJ.
*92 TALBOT, P.J.
Following a jury trial, defendant was convicted of one count of first-degree criminal sexual conduct (CSC), M.C.L. § 750.520b(1)(b)(ii); MSA 28.788(2)(1)(b)(ii), and two counts of second-degree CSC, M.C.L. § 750.520c(1)(b)(ii); MSA 28.788(3)(1)(b)(ii). The trial court sentenced defendant to concurrent terms of twenty to forty years' imprisonment for the first-degree CSC conviction and eight to fifteen years' imprisonment for each second-degree CSC conviction. Defendant appeals as of right. We affirm.

I
Defendant first argues that the trial court erred in allowing the prosecutor to cross-examine a defense witness with evidence of a prior criminal charge for which he was acquitted, contrary to People v. Falkner, 389 Mich. 682, 209 N.W.2d 193 (1973). We disagree.
Complainant, who is learning disabled, testified that when she was fifteen years old, her uncle (defendant) fondled her on three separate occasions and digitally penetrated her once. Defense witness Robert Ganger, who was employed by defendant to investigate the allegations, testified that on the two occasions he spoke with complainant, she denied that defendant had either "touched [her] private parts" or "put his finger in [her] private parts."
Following direct examination, the prosecutor moved to question Ganger concerning the fact that he had been charged and acquitted of first-degree CSC against his daughter, then a child under the age of thirteen. The prosecutor argued that evidence that Ganger had been through the entire criminal process and ultimately acquitted of a charge similar to that for which defendant was on trial was admissible to show that he may have colored his *94 investigation and testimony in defendant's favor. Over defense counsel's objection, the trial court permitted the prosecutor to cross-examine Ganger regarding the prior charge. The trial court reasoned that the prior charge was not being offered to impeach Ganger's credibility or to show his predisposition to commit CSC crimes. Instead, the trial court ruled that the evidence was being offered for the limited purpose of showing Ganger's potential bias toward defendant. In addressing the issue of bias, the trial court stated:
[The prosecutor] certainly could argue on the one hand that the witness would be biased because he is employed, I would assume, by you [defense counsel] and your client [defendant]. She could also and apparently seeks to do so, argue that as a result of him being accused and acquitted of a crime which he claims he did not do of a very similar nature, that he is therefore biased in the Defendant's favor and presumably would color his testimony to help the Defendant, another person who he may believe would be also wrongly accused of the same crime.
The prosecutor subsequently extracted testimony that Ganger had been charged, tried, and acquitted of first-degree CSC against his daughter and that he knew defendant had been charged with firstdegree CSC when he spoke to complainant and her aunt during his investigation.
In Falkner, the Supreme Court set forth a seemingly broad rule forbidding examinations concerning prior arrests and charges that did not result in conviction:
We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial. [Id. at 695, 209 N.W.2d 193.]
In People v. Bell, 74 Mich.App. 270, 284, 253 N.W.2d 726 (1977), this Court explained the rationale for the rule as follows:
[The Falkner Court] reasoned that since an individual may be charged or arrested for an offense of which he may never be tried, or tried and found not guilty, or the charge dismissed, the truth-seeking function of a trial and the protection of the individual would best be served if only convictions could be used for impeachment purposes. Convictions are specific and definite proof of past misconduct whereas charges or arrests are only inferences of misconduct.
Although the prohibition is phrased broadly, subsequent cases construing Falkner have limited its holding to instances where, as in Falkner, the prior arrests or charges are used for the purpose of "impeaching" a witness' credibility. See, e.g., People v. Yarbrough, 183 Mich.App. 163, 164-165, 454 N.W.2d 419 (1990); People v. Westbrook, 175 Mich.App. 435, 437, 438 N.W.2d 300 (1989); Scott v. Hurd-Corrigan Moving & Storage Co., Inc., 103 Mich.App. 322, 343, 302 N.W.2d 867 (1981); People v. Torrez, 90 Mich.App. 120, 124, 282 N.W.2d 252 (1979); People v. Harrington, 76 Mich. App. 118, 121, 256 N.W.2d 52 (1977); see also People v. Sanders, 394 Mich. 439, 440, 231 N.W.2d 639 (1975); People v. Rappuhn, 390 Mich. 266, 270-271, 212 N.W.2d 205 (1973). Consequently, this Court has recognized an exception to the ostensibly strict holding where "the prior arrest is not used to directly impeach the witness but to bring out the witness's bias or interest in the outcome of the case." People v. Hogan, 105 Mich.App. 473, 483, 307 N.W.2d 72 (1981); see also People v. Bostic, 110 Mich.App. 747, 750, 313 N.W.2d 98 (1981). We note that the cases applying the bias exception have involved situations where the prosecutor or defense sought to introduce pending charges or arrests not yet resulting in conviction.[1] However, *95 where an unproven charge is offered not to impeach the witness, but to show the witness' bias or interest in the case, we find no compelling reason to distinguish between charges that have yet to be proved and those that the prosecution has either failed to prove or dismissed.
Our conclusion is consistent with federal and state authority emphasizing that the bias or interest of a witness is almost always relevant to the substantive issue of witness credibility. In United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the United States Supreme Court stated:
Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.
Similarly, in addressing the constitutional right to confrontation, the Court explained:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to ... discredit [ ]the witness.... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial and is "always relevant as discrediting the witness and affecting the weight of his testimony." [Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), quoting 3A Wigmore, Evidence (Chadbourn rev.), § 940, p. 775.]
See also People v. Morton, 213 Mich.App. 331, 334, 539 N.W.2d 771 (1995) (the bias or interest of a witness is always a relevant subject of inquiry on cross-examination); People v. Lester, 232 Mich.App. 262, 273, 591 N.W.2d 267 (1998); People v. Coleman, 210 Mich.App. 1, 8, 532 N.W.2d 885 (1995); and People v. Mumford, 183 Mich.App. 149, 152, 455 N.W.2d 51 (1990) (the credibility of a witness is an issue "of the utmost importance" in every case; evidence of a witness' bias or interest in a case is highly relevant to credibility); see also People v. Kelly, 231 Mich.App. 627, 644, 588 N.W.2d 480 (1998) ("[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional *96 right of confrontation"); People v. Minor, 213 Mich.App. 682, 685, 541 N.W.2d 576 (1995) ("[a] witness' motivation for testifying is always of undeniable relevance and a defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony"). Accordingly, we conclude that inquiry may be made on cross-examination regarding prior arrests or charges that did not result in conviction where the evidence is offered for the purpose of and is relevant to establishing a witness' bias or interest.
Unlike in Falkner and its progeny, the prosecutor in this case did not offer evidence that was completely unrelated to defendant or to the charges for which he was on trial to impeach Ganger's veracity.[2] Instead, the prosecutor's motion to question Ganger about the prior CSC charge came after the evidence established that defendant had hired Ganger to investigate the allegations and to interview complainant and that Ganger may have intimidated complainant in an attempt to prevent her from testifying against defendant.[3] In light of this evidence, the fact that Ganger had been accused and acquitted of a crime similar to that for which defendant was on trial was admissible to establish Ganger's potential motive for conducting his investigation or slanting his testimony, unconsciously or otherwise, to help defendant. Therefore, we hold that the trial court was within its discretion in admitting the contested evidence for the limited purpose of showing Ganger's bias or interest.

II
Defendant next contends that the trial court abused its discretion in admitting, as excited utterances, statements complainant made to her mother in 1986 concerning a prior sexual assault defendant allegedly committed against complainant. We disagree. The decision whether to admit evidence is within the trial court's discretion and will not be reversed absent an abuse of that discretion. People v. Lukity, 460 Mich. 484, 488, 596 N.W.2d 607 (1999).
At trial, complainant's mother, Adeline Layher, testified that when complainant was five years old, she sent her into the house to retrieve a clothes basket. When complainant did not return, Layher went inside the house and found complainant naked and crying behind a door. Over objection, Layher testified that complainant told her immediately after the incident, *97 both at home and at the hospital, that "her uncle had touched her in the wrong places," but without specifying where she had been touched. Approximately one week after the incident, Layher took complainant to a therapist. Layher testified, again over objection, that with the aid of anatomical dolls, complainant stated that defendant had put his "thing" on her and pointed to her mouth, buttocks, and vaginal area.
MRE 803(2) permits the admission of statements "relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." A statement is admissible under this exception if (1) there was a startling event and (2) the resulting statement was made while the declarant was under the excitement caused by that event. People v. Smith, 456 Mich. 543, 550, 581 N.W.2d 654 (1998); People v. Straight, 430 Mich. 418, 423-424, 424 N.W.2d 257 (1988). While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant's "lack of capacity to fabricate, not the lack of time to fabricate." Smith, supra at 551, 581 N.W.2d 654.
We initially reject defendant's assertion that the first requirement was not satisfied because there was no evidence of a startling event independent of the three hearsay statements, as required by People v. Burton, 433 Mich. 268, 294-295, 445 N.W.2d 133 (1989). Although there was no direct evidence that the assault occurred, the circumstantial evidence established that complainant did not return after her mother sent her into the house fully clothed to retrieve a clothes basket, that she was later found hiding behind a door naked and crying, that her mother immediately took her to the hospital because she was "crying" and "real shaken," and that doctors at the hospital determined that she had been molested. We hold that this strong circumstantial evidence was sufficient to establish that the sexual assault occurred, see People v. Kowalak (On Remand), 215 Mich.App. 554, 559-560, 546 N.W.2d 681 (1996), and that it constituted a startling event. See Straight, supra at 425, 424 N.W.2d 257 ("[f]ew would quarrel with that conclusion that a sexual assault is a startling event").
Defendant also argues that the third statement made during the therapy session could not be deemed an excited utterance because it was made one week after the alleged incident and was induced through questioning with the aid of anatomical dolls. We disagree.
The evidence established that after complainant had twice told Layher that defendant had "touched her in the wrong places," she took the child to therapy a week after the incident because the child was "emotional," "really disturbed," and nonresponsive. At the therapy session, complainant did not use technical terms to describe what defendant did, but merely stated that defendant had put his "thing" on her and pointed to her body parts. Unlike in Straight, cited by defendant, there is no record evidence to support his claim that Layher or the therapist repeatedly and emotionally asked complainant what happened until she answered.[4] These circumstances, combined with complainant's young age, mental deficiency, and the relatively short interval between the assault and the statement, militate against the possibility of fabrication and support an inference that the statement was made out of a continuing state of emotional shock precipitated by the assault. See generally People v. Garland, 152 Mich.App. 301, 393 N.W.2d 896 (1986); People v. Draper, 150 Mich.App. 481, 389 N.W.2d 89 (1986); People v. Soles, 143 Mich.App. 433, 372 N.W.2d 588 (1985). We therefore conclude that the trial court did not abuse its discretion in admitting the contested hearsay statements under *98 the excited utterance exception to the hearsay rule.

III
Defendant next argues that the trial court abused its discretion in admitting evidence of the alleged 1986 sexual assault under MRE 404(b). Defendant contends that the proffered rationales for the admission of this other-acts evidence were not in issue and that the unfair prejudice emanating from it outweighed its probative value. Again, we disagree. Pursuant to MRE 404(b), evidence of other crimes, wrongs, or acts is admissible if (1) the evidence is offered for a proper purpose rather than to prove the defendant's character or propensity to commit a crime, (2) the evidence is relevant to an issue or fact of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. People v. VanderVliet, 444 Mich. 52, 55, 508 N.W.2d 114 (1993). Accord People v. Crawford, 458 Mich. 376, 385, 582 N.W.2d 785 (1998); People v. Starr, 457 Mich. 490, 496, 577 N.W.2d 673 (1998).
"In People v. DerMartzex, 390 Mich. 410, 213 N.W.2d 97 (1973), the Supreme Court held that evidence of other sexual acts between a defendant and his victim may be admissible if the defendant and the victim live in the same household and if, without such evidence, the victim's testimony would seem incredible." People v. Sabin, 223 Mich.App. 530, 533, 566 N.W.2d 677 (1997); see also People v. Puroll, 195 Mich.App. 170, 171, 489 N.W.2d 159 (1992); People v. Dreyer, 177 Mich.App. 735, 737, 442 N.W.2d 764 (1989); People v. Skinner, 153 Mich.App. 815, 823, 396 N.W.2d 548 (1986); People v. Bailey, 103 Mich.App. 619, 624-625, 302 N.W.2d 924 (1981); People v. Hammer, 98 Mich.App. 471, 474-475, 296 N.W.2d 283 (1980). Moreover, in Starr, supra at 501-502, 577 N.W.2d 673, the Court held that prior sexual acts between the defendant and his half-sister were admissible to rebut the defendant's claim that the charges were groundless and fabricated by the victim's mother.
In the present case, complainant testified that the alleged instances of sexual abuse occurred while she and defendant were living with her grandmother (defendant's mother) and that two of the molestations took place while family members were present in the apartment or sleeping in the same room. The prosecutor offered evidence of the prior assault, which allegedly occurred while complainant's mother was around, to rebut defendant's theory that complainant had fabricated the instant allegations, by showing that defendant was, in both instances, willing to risk assaulting complainant while other family members were nearby. Consequently, the evidence was offered for a proper purpose and was relevant to an issue of consequence at trial. See Starr, supra at 501-502, 577 N.W.2d 673; DerMartzex, supra at 414-415, 213 N.W.2d 97.
Further, after thorough review, we conclude that the trial court did not abuse its discretion in ruling that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. The probative value of the prior uncharged offense was directly relevant to the victim's credibility and the jury received an appropriate limiting instruction. People v. Gibson, 219 Mich.App. 530, 534, 557 N.W.2d 141 (1996). Accordingly, the trial court was within its discretion in admitting this evidence. Starr, supra at 494, 577 N.W.2d 673.

IV
Finally, defendant argues that he was denied a fair trial because the prosecutors involved in the case intimidated complainant with threats of jail and perjury in order to gain favorable testimony from her. However, defendant failed to preserve this issue because he did not raise it before the trial court. People v. Grant, 445 Mich. 535, 546, 520 N.W.2d 123 (1994); People v. Stacy, 193 Mich.App. 19, 28, 484 N.W.2d 675 (1992). Therefore, our review is limited to determining whether defendant has demonstrated a plain error *99 that affected substantial rights. People v. Carines, 460 Mich. 750, 763, 597 N.W.2d 130 (1999).
It is well settled that a prosecutor may not intimidate witnesses in or out of court. People v. Clark, 172 Mich.App. 407, 409, 432 N.W.2d 726 (1988), citing People v. Pena, 383 Mich. 402, 406, 175 N.W.2d 767 (1970), and People v. Crabtree, 87 Mich.App. 722, 725, 276 N.W.2d 478 (1979). However, a prosecutor may inform a witness that false testimony could result in a perjury charge. See People v. Morrow, 214 Mich.App. 158, 165, n. 5, 542 N.W.2d 324 (1995) (prosecutor properly informed recanting witness that failure to testify truthfully would subject her to criminal prosecution for perjury); People v. Robbins, 131 Mich.App. 429, 439, 346 N.W.2d 333 (1984) (warnings to potential defense witness concerning possible perjury charges have been held to be proper); see also Hence v. Smith, 49 F. Supp. 2d 547, 552 (E.D.Mich., 1999), quoting United States v. Whittington, 783 F.2d 1210, 1219 (C.A.5, 1986) ("a prosecutor does not attempt to intimidate a defense witness by warning him or her ... of the consequences of testifying, where the prosecutor simply tells a witness that if he or she testifies falsely, such testimony would support a perjury indictment"). After a contextual review of the record, we conclude that the prosecutors did not intimidate complainant with improper threats, but merely informed her, apparently in response to her questions on the subject, that she could face perjury charges if she testified falsely. Defendant has therefore failed to demonstrate a plain error that affected the outcome of the trial.
Affirmed.
MARKEY, J., concurred.
FITZGERALD, J. (dissenting).
I strongly dissent from the majority's conclusion in issue I that the trial court properly allowed the prosecutor to crossexamine a defense witness with evidence of a prior criminal charge for which the witness was acquitted.
MRE 609 governs impeachment by evidence of conviction of a crime. In People v. Falkner, 389 Mich. 682, 695, 209 N.W.2d 193 (1973), the Supreme Court succinctly set forth a rule precluding examination regarding prior arrests and convictions that did not result in conviction:
We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction whether by plea or trial.
Thus, only evidence of convictions are admissible for impeachment purposes.
The majority has cited People v. Hogan, 105 Mich.App. 473, 483, 307 N.W.2d 72 (1981), and People v. Bostic, 110 Mich.App. 747, 749, 313 N.W.2d 98 (1981), in support of its holding that "this Court has recognized an exception to the ostensibly strict holding where `the prior arrest is not used to directly impeach the witness but to bring out the witness's bias or interest in the outcome of the case.'" Ante at 94. The majority notes that the cases applying the bias exception have involved situations where the prosecutor or defense sought to introduce pending charges or arrests not yet resulting in conviction. Nonetheless, the majority holds that "where an unproven charge is offered not to impeach the witness, but to show the witness' bias or interest in the case, we find no compelling reason to distinguish between charges that have yet to be proved and those that the prosecution has either failed to prove or dismissed." Ante at 95.
The majority has failed, however, to consider how the facts of Hogan and Bostic contributed to the Court's decision to permit the witness in each case to be examined regarding a prior arrest. In Bostic, the defense witness who was examined regarding a prior arrest was arrested with the defendant. Therefore, this Court held that testimony to the effect that one of the *100 witnesses had been arrested in connection with the same incident for which the defendant was standing trial was not improper because the fact that the witness had been arrested could provide a motive for false testimony later in the case. In Hogan, false testimony later in the case. In Hogan, the witness' prior arrest was related to the offense for which the defendant was standing trial. Therefore, this Court held that the trial court properly allowed admission of evidence of the res gestae witness' prior arrest that did not result in a conviction to demonstrate the witness' bias in the outcome of the case and motivation to give false testimony. Clearly, each case involved a witness who was interested in or connected with the crime for which the defendant was being tried. Indeed, in People v. Torrez, 90 Mich.App. 120, 124, 282 N.W.2d 252 (1979), this Court noted that the exception on which the majority relies most often "will occur when the witness is an accomplice or an informant testifying pursuant to a plea agreement."
I do not agree that the bias exception to Falkner that was applied in Bostic and Hogan is applicable under the facts of the present case.[1] The majority has cited no case that purports to limit the scope of Falkner such that a witness may be impeached with an unrelated charge or arrest simply because it is similar to the charge for which the defendant is standing trial. Indeed, the majority's holding implies that because a defense witness was charged and acquitted of essentially the same crime as the defendant, the witness will be biased in favor of the defendant. Applying the majority's reasoning, any witness who has ever been charged with any crime should naturally be sympathetic to the defendant now facing charges. The witness would then be subject to cross-examination because the witness' prior experiences would render the witness biased against the prosecution and sympathetic to the defendant. Essentially, the exception suggested by the majority would swallow the Falkner rule.
Accordingly, I would conclude that the trial court abused its discretion by allowing the prosecutor to cross-examine Ganger regarding a prior unrelated charge that did not result in conviction.
The issue, then, is whether the error was harmless. The only evidence of defendant's guilt was the testimony of the complainant. Thus, Ganger's credibility was a key issue in this case. If the jury believed Ganger's testimony that on two separate occasions complainant stated that defendant had not sexually touched her or placed his finger in her vagina, defendant would likely have been acquitted. Thus, after an examination of the entire record, it affirmatively appears that it is more probable than not that the error was outcome determinative. People v. Lukity, 460 Mich. 484, 596 N.W.2d 607 (1999). I would reverse.
NOTES
[1] See, e.g., Yarbrough, supra at 165, 454 N.W.2d 419 (pending charges against defense witness that arose out of the same incident for which the defendant was on trial); People v. Hall, 174 Mich.App. 686, 690-691, 436 N.W.2d 446 (1989) (pending charges against prosecution witness); Bostic, supra at 750, 313 N.W.2d 98 (defense witness' arrest arising out of the same transaction for which the defendant was on trial); Hogan, supra at 483-484, 307 N.W.2d 72 (defense witness' arrest on a bench warrant issued after he left court unannounced on the first day of the defendant's trial); People v. Oliver, 111 Mich.App. 734, 751, 314 N.W.2d 740 (1981) (defense witness' arrest for failure to appear at the defendant's trial when subpoenaed); People v. Whitty, 96 Mich.App. 403, 417-418, 292 N.W.2d 214 (1980) (charges pending against prosecution witness); Torrez, supra at 124, 282 N.W.2d 252 (pending perjury charges against government informant); Harrington, supra at 121, 256 N.W.2d 52 (prior arrests of government informant to establish that he had made a deal with the police, and might still be subject to prosecution and hence had an interest in the outcome of the case).
[2] See, e.g., Falkner, supra at 686-687, 209 N.W.2d 193 (in prosecution for first-degree murder, defense witnesses were impeached with prior theft charges); People v. Westbrook, 175 Mich.App. 435, 437, 438 N.W.2d 300 (1989) (in prosecution for larceny, defense witness was impeached with evidence of prior arrests for rape, attempted unlawful driving away an automobile, and unlawful driving away an automobile); People v. Carpenter, 120 Mich.App. 574, 582-583, 327 N.W.2d 523 (1982) (in prosecution for armed robbery, defense witness was impeached with evidence of a prior weapons charge); People v. Marshall, 73 Mich.App. 97, 99-100, 250 N.W.2d 557 (1976) (in prosecution for armed robbery, defense witness was impeached with evidence of prior unrelated arrests); People v. Beebe, 70 Mich.App. 154, 161-162, 245 N.W.2d 547 (1976) (in prosecution for armed robbery and breaking and entering, the defendant was precluded from impeaching prosecution witness concerning the arrest and release from jail of another prosecution witness involving a charge unrelated to the case at bar).
[3] Both complainant and her aunt, who was present during each meeting, testified that complainant never denied defendant's conduct as Ganger claims. Complainant also testified that Ganger asked her if she wanted to "send defendant to jail for the rest of his life because [of what] he did"; advised her that she could "just take the fifth"; told her that "they gonna have to plug one of my hair from my head out and that I'm going to have to take a drug test"; and told her that if she had done certain things with her older boyfriend, like hugging him, she could go to jail. Similarly, complainant's aunt testified that Ganger advised that if the matter were pursued, "things could get out of hand" such that defendant, his attorney, or the court could require complainant to undergo drug testing, and correlated complainant's relationship with her boyfriend with "what defendant was doing with her." Ganger either denied that he made the comments or stated that the witnesses had taken them out of context.
[4] Straight, supra at 421, n. 1, 424 N.W.2d 257.
[1] Thus, I do not believe it is necessary to determine whether the bias exception would apply in those cases where the prosecutor failed to prove the charges or dismissed the charges.