PEOPLE v JANCAR

Docket No. 47857. Submitted December 4, 1984, at Detroit.—Decided January 14, 1985.

John J. Jancar, Jr., allegedly shot and killed his father and his father's girlfriend at their home in Genesee County. He then allegedly drove to Lapeer County and shot and wounded two other persons, one of whom later died from her injuries. Jancar was arraigned in Genesee County on two counts of open murder and two counts of felony-firearm and in Lapeer County on two counts of assault with intent to commit murder and two counts of felony-firearm. The Lapeer charges were later amended to include one count of first-degree murder. Defendant moved in both Genesee Circuit Court and Lapeer Circuit Court to consolidate the charges. The motions were both denied, Judith Anne Fullerton, J., and Norman A. Baguley, J., respectively. Following a jury trial in Genesee Circuit Court, a jury found defendant guilty of second-degree murder in the death of his father and guilty of voluntary manslaughter in the death of his father's girlfriend. Defendant was sentenced, Judith Anne Fullerton, J. Shortly thereafter, pursuant to a plea agreement, defendant pled guilty to second-degree murder, felony-firearm,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 21 Am Jur 2d, Criminal Law §§ 378, 379, 387.
  Choice of venue to which transfer is to be had, where change is sought because of local prejudice. 50 ALR3d 760.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 390, 391.
[4-6] 21 Am Jur 2d, Criminal Law § 389.
  47 Am Jur 2d, Jury §§ 300, 303.
  Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.
[6] 47 Am Jur 2d, Jury § 276.
[7] 76 Am Jur 2d, Trial §§ 1156-1159.
  Inconsistency of criminal verdict as between different counts of indictment or information. 18 ALR3d 259.
[8] 4 Am Jur 2d, Appeal and Error § 624.
[9] 75 Am Jur 2d, Trial §§ 260, 261.
  Propriety and effect of prosecuting attorney's argument to jury indicating his belief or knowledge as to the guilt of the accused. 50 ALR2d 766.

and assault with intent to commit murder in Lapeer Circuit Court and was sentenced, Norman A. Baguley, J. Defendant appealed from his Genesee Circuit Court convictions. *Held:*

1. The Genesee Circuit Court's failure to join the Lapeer and Genesee cases did not subject defendant to double jeopardy.

2. Denial of defendant's motion for a change of venue did not constitute error.

3. There was no abuse of discretion in the court's refusal to dismiss a prospective juror for cause where that juror stated that, despite prior knowledge of the case and being acquainted with some of the witnesses, she could keep an open mind and had not prejudged the case.

4. The fact that the jury rendered inconsistent verdicts does not entitle defendant to reversal of his convictions.

5. Defendant's contention that the prosecutor's remark during closing argument that defendant loaded a shotgun with the intent to kill someone in addition to the victims for the homicides of whom he was on trial was prejudicial and denied him a fair and impartial trial is rejected.

Affirmed.

1. CRIMINAL LAW — VENUE — CHANGE OF VENUE.
   Venue of a criminal case may be changed upon good cause shown by either party (MCL 762.7; MSA 28.850).

2. CRIMINAL LAW — VENUE — CHANGE OF VENUE — APPEAL.
   A motion for a change of venue in a criminal case is addressed to the trial court's discretion and the exercise of that discretion will be overturned on appeal only on a finding of abuse.

3. CRIMINAL LAW — VENUE — CHANGE OF VENUE.
   An abuse of discretion will not be found where a trial court elects to defer determination of a request for a change of venue until jury selection has been attempted in the original county.

4. CRIMINAL LAW — VENUE — PRETRIAL PUBLICITY — CHANGE OF VENUE.
   The existence of pretrial publicity does not in itself require a change of venue; if jurors are able to set aside their impressions or opinions and render a verdict based upon the evidence adduced at trial, a change of venue is not necessary.

5. CRIMINAL LAW — VENUE — CHANGE OF VENUE.
   A change of venue because of pretrial publicity is proper only where there is a finding of a strong community feeling or a bitter prejudice toward the defendant.

6. CRIMINAL LAW — JURORS — KNOWLEDGE OF PRETRIAL PUBLICITY.
  Knowledge of publicity concerning a case does not automatically make a prospective juror unfit to serve if that juror does not have a preconceived notion concerning defendant's guilt or innocence which cannot be set aside (MCL 768.10; MSA 28.1033).

7. CRIMINAL LAW — JURY — INCONSISTENT VERDICTS.
  Jury verdicts rendered on several counts of a multi-count information need not necessarily be consistent.

8. APPEAL — PROSECUTORIAL COMMENT — PRESERVING QUESTION.
  The absence of objection during trial precludes appellate review of allegedly prejudicial prosecutorial remarks unless the prejudicial effect was so great that it could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice.

9. CRIMINAL LAW — PROSECUTORIAL COMMENT — CLOSING ARGUMENT.
  A prosecutor, as an advocate, is free, in closing argument, to relate the facts to his theory of the case and to argue the evidence and all reasonable inferences to be drawn therefrom.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Steven W. Moulton,* for defendant on appeal.

Before: DANHOF, C.J., and T. M. BURNS and R. H. BELL,* JJ.

PER CURIAM. Defendant, age 17 at the time of the instant offenses, appeals as of right from convictions of second-degree murder, MCL 750.317; MSA 28.549, and voluntary manslaughter, MCL 750.321; MSA 28.553, following a jury trial in Genesee County Circuit Court. Defendant was sentenced on August 29, 1983, to 40 to 60 years in prison for the second-degree murder conviction

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and 10 to 15 years in prison for the manslaughter conviction.

Latecia Marie Bentley (Tish) testified that on December 31, 1982, defendant lived in Goodrich, in Genesee County, with his father (John Jancar, Sr.) and his father's girlfriend (Joyce Pearl Carr) and her children, including Tish. On that day, defendant accompanied Tish and her boyfriend, David Passmore, to a party given by Julie Passmore, David's sister, at her home in Flint. It was undisputed that defendant was drinking alcoholic beverages while at the party, but the amount consumed was the subject of conflicting testimony.

Sometime after midnight, Tish got into an argument with her boyfriend and defendant intervened. A scuffle ensued, during which defendant struck Kevin Passmore, David's brother, in the mouth. Defendant pulled a knife and left the house. Julie Passmore followed defendant out of the house and chased him with a baseball bat. When Julie Passmore caught up to defendant, he threw a knife at her, which missed, and ran away.

According to defendant's testimony, he ran to the back of a donut shop, where he passed out. When he came to, he telephoned his brother and asked him to call his father. A while later, defendant's father and Joyce Carr came to the donut shop and picked defendant up. They then drove to the house of Randy Griffith looking for Tish. They found Tish at the Griffith home and defendant's father ordered her into the car. They drove to the Jancar residence and, on the way, defendant and Tish engaged in an argument with John Jancar, Sr. When they arrived home, Tish and defendant were ordered to their respective bedrooms. Tish went to bed but approximately 10 minutes later she heard a loud noise. She opened her bedroom

door and saw defendant standing outside with a gun. She shut the door and hid under the bed.

Robert Jancar, defendant's younger brother, remained at home during the evening of Decememember 31, 1982, with his half-brothers, Jason and Jeffrey Crane. His father, defendant, Tish, and Joyce Carr arrived home at approximately 2:15 a.m. Soon thereafter, Robert got out of bed to let the dog out. He heard a shot and heard defendant saying, "You shouldn't have pushed me so far old man". He then heard Joyce Carr say, "Don't do it", followed by a second shot. Defendant then came into the living room carrying a gun and told Robert not to call the police. Jeffrey Crane testified in similar fashion, adding that as defendant was leaving he stated, "Just tell the cops when they get here they will find me dead in Lapeer like dad is". Defendant left in an automobile, after which Robert went into the kitchen and saw his father and Joyce Carr on the kitchen floor. He called the police and an officer from the Atlas Township Police Department was dispatched to the Jancar residence at 3:10 a.m.

Defendant then drove to the apartment of his former girlfriend, Laura Mallot, who lived in Almont Township, Lapeer County. When there was no answer to his knocking, defendant gained entrance to the apartment by shooting a hole in the door with the shotgun. After Laura Mallot awoke, an argument ensued. Robert Parker, Ms. Mallot's next door neighbor, was awakened by the loud noises and knocked on Laura's apartment door to see if there was something he could do. Defendant appeared with the shotgun and fired the gun at Parker, who sustained wounds to his hand and chest.

When the shooting of Parker occurred, Laura Mallot ran out of her apartment. Defendant shot

her as she ran and she fell to the ground. She tried to get back up but defendant shot her again because "he wanted her to be dead before being crippled".

Following the shootings, defendant drove away from the scene. He was apprehended by the Flint Police at his sister's home at approximately 4:30 a.m. When defendant was arrested, he had a 16-gauge shotgun and several shotgun shells in his possession.

Defendant was arraigned in Genesee County on two counts of open murder and two counts of felony-firearm. Defendant was arraigned in Lapeer County on two counts of assault with intent to commit murder and two counts of felony-firearm. When Laura Mallot died on January 10, 1983, as a result of the gunshot wounds, the Lapeer County complaint was amended to include the charge of first-degree murder. Prior to his trial in Genesee County, defendant moved to consolidate the Lapeer County and Genesee County charges. The motion was denied. (A similar motion was filed in Lapeer County, which was also denied.)

Carolyn K. Grose, defendant's former girlfriend, testified that defendant came to her house in Goodrich at 3:30 a.m. on January 1, 1983, and told her that he had killed his dad and Joyce. Don Hatchew, Chief Investigating Officer for the Atlas Township Police Department, testified as to a statement given by defendant at approximately 7:30 a.m. on January 1, 1983. The statement is essentially consistent with the testimony of the other witnesses and defendant's own testimony given at trial.

At trial, defendant acknowledged shooting his father and Joyce Carr, but asserted a defense of diminished capacity. Defendant presented a number of witnesses who testified as to his long-term

substance abuse problem, his extremely depressed emotional condition, the long-standing mental and physical abuse suffered at the hands of his father, and his father's well-known reputation for violence towards his children and wives. In further support of his defense, defendant presented the expert testimony of Beverly Anderson, M.D., a licensed psychiatrist, who testified that in her opinion defendant did not have the capacity at the time of the shootings to formulate the requisite intent to be guilty of murder. The prosecution countered this with rebuttal testimony from Newton L. P. Jackson, Jr., a psychologist and director of the evaluation unit of the Forensic Center, who opined that defendant was capable of forming the requisite intent.

Defendant was found guilty of second-degree murder on Count I (John Jancar, Sr.) and voluntary manslaughter on Count II (Joyce Carr). He was sentenced on August 29, 1983, and given credit for 241 days served.

On September 19, 1983, pursuant to a plea-bargain agreement, defendant pled guilty to second-degree murder, felony-firearm, and assault with intent to commit murder in Lapeer County. On October 24, 1983, defendant was sentenced to 60 to 90 years in prison for second-degree murder, two years for felony-firearm, and 20 to 40 years for the assault with intent to commit murder. He received 297 days' credit for time already served. On this appeal, defendant asserts error in five respects concerning the Genesee County case. We affirm his convictions.

Defendant's first claim of error is based on the double jeopardy protections of US Const, Am V and Const 1963, art 1, § 15. Defendant asserts that the crimes committed in Genesee and Lapeer Counties were part of a continuous time sequence

and, therefore, part of the same transaction. Defendant posits that both sets of crimes manifested but one single intent and goal so that the lower court's failure to join the Lapeer and Genesee cases subjected him to double jeopardy.

Defendant's trial in Genesee County, however, was held before his guilty plea was taken in Lapeer County. Therefore, if defendant was subjected to double jeopardy, it would have occurred in Lapeer County, which is the subject of defendant's other appeal. Since the case *sub judice* concerns only defendant's convictions in Genesee County, the double jeopardy clause is not implicated here.

Next, because of the extensive pretrial publicity associated with both the Genesee and Lapeer County cases, defendant asserts that it was impossible for him to receive a fair and impartial trial in Genesee County. In this connection, defendant argues that the trial court failed to adequately screen the prospective jurors to insure that they could be impartial and that his motion for a change of venue should have been granted.

Venue of a criminal case may be changed "upon good cause shown by either party". MCL 762.7; MSA 28.850. A motion for change of venue in a criminal case is addressed to the trial court's discretion, and the exercise of that discretion will be overturned on appeal only on a finding of abuse. *People v Clay,* 95 Mich App 152, 160; 289 NW2d 888 (1980), *lv den* 409 Mich 857 (1980). An abuse of discretion will not be found where a trial court, as here, elects to defer determination of a request for change of venue until jury selection has been attempted in the original county. *People v Nixon,* 114 Mich App 233, 240; 318 NW2d 655 (1982).

Moreover, the existence of pretrial publicity does

not itself require a change of venue. *Murphy v Florida*, 421 US 794; 95 S Ct 2031; 44 L Ed 2d 589 (1975). If jurors are able to set aside their impressions or opinions and render a verdict based upon the evidence adduced at trial, a change of venue is not necessary. *People v Prast (On Reh)*, 114 Mich App 469, 477; 319 NW2d 627 (1982). A change of venue is proper only where there is a finding of a strong community feeling or a bitter prejudice towards the defendant. *Id.*

In the instant case, although there had been pretrial publicity, those jurors who felt they could not render an impartial decision were excused for cause. Of the jurors who were eventually impaneled, four admitted to having prior knowledge of the case. All four, however, stated that they could serve as impartial jurors and base their verdicts on the evidence adduced at trial. Thus, under *Prast, supra,* denial of defendant's motion for a change of venue did not constitute error. In any event, defendant raised no objection about the jury after it had been impaneled.

Defendant's third claim of error is related to his second, *viz.:* because of her extensive knowledge of the Genesee and Lapeer County cases and her association with a relative of one of the decedents, prospective juror Agnes Dingman should have been excused for cause. Since she was not, defendant maintains that he was forced to use a peremptory challenge which should have been available to him at a later time. While defendant admits it is impossible to trace the effect this had on the ultimate selection of the jury, he concludes that it clearly did not work toward the selection of a fair and impartial jury. We disagree.

Potential juror Agnes Dingman, when questioned during voir dire, indicated that she knew two of the witnesses who were scheduled to testify.

She also indicated that she worked with defendant's cousin and had discussed the case with her. Because of Ms. Dingman's revelations, an *in camera* proceeding was held. During this proceeding, Dingman essentially stated that she had heard that defendant had gone to his mother's home that night, presumably to shoot her as well; that defendant wrote a letter to his schoolmates in Goodrich, indicating that he was angry; and that defendant had shot his girlfriend in Lapeer. Despite Ms. Dingman's knowledge of the case, she stated that she had not prejudged the case either way and that she could keep an open mind. After the *in camera* voir dire was finished, defendant's counsel challenged Ms. Dingman for cause. The request was denied. Defense counsel then exercised a peremptory challenge and Ms. Dingman was excused from the jury.

Ms. Dingman, without a doubt, knew more about the case than the average prospective juror. However, knowledge of publicity concerning a case does not automatically make a prospective juror unfit to serve if that juror does not have a preconceived notion concerning the defendant's guilt or innocence which cannot be set aside. *People v Dixon,* 84 Mich App 675, 680; 270 NW2d 488 (1978) *lv den* 405 Mich 837 (1979); MCL 768.10; MSA 28.1033. Because Dingman stated that she was able to keep an open mind, we find no abuse of discretion in refusing to dismiss her for cause. In any event, we do not find defendant's claim of prejudice persuasive.

Penultimately, defendant claims reversible error for the reason that the jury verdict was inconsistent, *i.e.,* if defendant acted in an excited state of mind induced by adequate or reasonable provocation during the shooting of Joyce Carr, as the jury found, then that state of mind must have existed

at the time defendant shot John Jancar, Sr., as it was only a few seconds earlier and the jury should not have returned a verdict of second-degree murder.

Defendant shot the two victims within seconds of each other and yet the jury found him guilty of second-degree murder for the first homicide and voluntary manslaughter for the second. While ostensibly inconsistent, the verdicts are not cause for reversal or remand. In *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980), the Supreme Court held that consistency in a jury verdict is not necessary. Because the jury is the sole judge of the facts, it can choose, without any apparent logical basis or requirement to explain the decision, what evidence to believe. An element of the jury's power is the capacity for leniency. Accord, *People v Horton (On Remand),* 107 Mich App 739; 310 NW2d 34 (1981). Defendant's claim is without merit.

Finally, defendant argues that the prosecutor's remark during closing argument, that defendant loaded a shotgun with the intent to kill someone in addition to the victims for which he was on trial, was prejudicial and denied him a fair and impartial trial.

During his closing argument, the prosecutor was discussing defendant's state of mind at the time of the crimes and the differences in the stories defendant had told the expert psychiatric witnesses and Detective Hatchew. The prosecutor then stated:

"I submit to you, the more accurate one is the one that he told Detective Hatchew the morning of the shooting. I submit to you, based on that statement, based on all the evidence, based on the details that we have shown to you, John Jancar had a state of mind where he was very thoughtful, were [*sic,* where?] he could premeditate, were [*sic,* where?] he could deliberate. *And that on his way to the bedroom he wasn't*

*going for the gun to shoot himself with the two bullets
as he told you, he had three bullets. One for Joyce, one
[for] his father, and one for someone else.* Or, perhaps,
even Joyce and his father if he wasn't accurate with the
first one." (Emphasis added.)

The emphasized portion above is that to which
defendant objects. It can easily be seen that the
two sentences were taken somewhat out of con-
text. Moreover, defendant failed to object to this
statement at trial. It is well established that the
absence of objection during trial precludes appel-
late review of allegedly prejudicial prosecutorial
remarks unless the prejudicial effect was so great
that it could not have been cured by a cautionary
instruction and failure to consider the issue would
result in a miscarriage of justice. *People v Duncan,*
402 Mich 1, 16; 260 NW2d 58 (1977).

Here, we do not believe that this comment could
not have been cured through appropriate instruc-
tions. Nor will a miscarriage of justice result if we
decline to entertain this issue. In any event, it is
not clear that this statement was improper inas-
much as the prosecutor is free to relate his theory
of the case and to argue the evidence and all
reasonable inferences to be drawn therefrom. *Peo-
ple v Jansson,* 116 Mich App 674; 323 NW2d 508
(1982).

Affirmed.