PEOPLE v SOLES

Docket No. 68350. Submitted April 1, 1985, at Detroit.—Decided June 4, 1985. Leave to appeal applied for.

Defendant, Karol D. Soles, was convicted following a jury trial in the Shiawassee Circuit Court of first-degree criminal sexual conduct. The trial court, Peter J. Marutiak, J., sentenced defendant to life imprisonment. Defendant appeals. *Held:*

1. The admission of certain hearsay testimony from Michelle Garden, a protective services worker, and Detective Robert Heikkela of the Michigan State Police, even if in error, was harmless beyond a reasonable doubt. The absence of the hearsay testimony would not have persuaded even one juror to vote for acquittal.

2. If error occurred in regard to the prosecutor's argument for the applicability of the tender years exception to the hearsay rule, such error was harmless.

3. The prosecutor's questioning of the defendant regarding his refusal to continue an interview with the police was harmless error. Defendant's chances of acquittal without the reference to his refusal to answer further questions would have been nil.

4. The trial court, on remand by the Court of Appeals in order to permit an explication of the reasons for imposing a life sentence, complied with the requirement to state on the record

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 493 *et seq.*

[2] 29 Am Jur 2d, Evidence § 708.
When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed 451.

[3] 29 Am Jur 2d, Evidence § 590.
Modern status of law regarding cure of error, in instructions as to one offense, by conviction of higher or lesser offenses. 15 ALR4th 118.

[4] 29 Am Jur 2d, Evidence § 638 *et seq.*
Nonverbal reaction to accusation, other than silence alone, as constituting adoptive admission under hearsay rule. 87 ALR3d 706.

[5] 21 Am Jur 2d, Criminal Law § 525 *et seq.*

the criteria relied upon in imposing the chosen sentence. The sentence imposed is appropriate.

Affirmed.

1. EVIDENCE — HEARSAY — TENDER YEARS EXCEPTION — RULES OF EVIDENCE.

The tender years exception to the hearsay rule no longer exists under the Michigan Rules of Evidence.

2. EVIDENCE — HEARSAY — EXCITED UTTERANCE EXCEPTION — RULES OF EVIDENCE.

A statement must meet three criteria to come within the excited utterance exception to the hearsay rule: the statement must (1) arise out of a startling occasion, (2) be made before there has been time to contrive and misrepresent, and (3) relate to the circumstances of the startling occurrence (MRE 803[2]).

3. CRIMINAL LAW — EVIDENCE — HARMLESS ERROR.

Error in the admission of hearsay testimony in a criminal trial may be deemed harmless error where the absence of the hearsay testimony would not have persuaded even one juror to vote for acquittal and where the error cannot be characterized as intolerably offensive to the maintenance of a sound judicial system.

4. CRIMINAL LAW — SILENCE AS EVIDENCE — EVIDENCE.

Evidence of a defendant's refusal to answer additional questions during an interview with the police is not admissible except to contradict the defendant's assertion that he did answer the additional questions.

5. CRIMINAL LAW — APPEAL — SENTENCES — RECORD.

Trial courts, in order to aid the review of sentences, must articulate on the record at the time of sentencing in a criminal case the reasons for imposing the sentence; relief from the sentence imposed will be granted only where it is found that the trial court abused its discretion to the extent that the sentence shocks the conscience of the appellate court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David E. McClernan,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *James Krogsrud),* for defendant on appeal.

Before: BRONSON, P.J., and J. H. GILLIS and AL-LEN, JJ.

PER CURIAM. Defendant appeals as of right from his conviction of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and his sentence to life imprisonment.

At the time of the incident which provided the basis for his conviction, defendant was living in the home of the victim's mother, Sally Brown. On December 1, 1980, Ms. Brown left for work leaving the 6-year-old victim in the care of another daughter. Ms. Brown testified that when she returned home at 1 a.m. the next morning defendant was lying on the couch and explained to her that the victim had been injured in an accident. Defendant explained that he had taken the victim for a ride in his truck and that he was forced to slam on his brakes at one point. As a result, the defendant explained that the victim was thrown to the floor and that "some tools got up between her legs somehow". Ms. Brown testified that she ran to her daughter's room and found the victim lying in bed with the sheets and the vaginal area of her pajamas soaked in blood. The victim was then taken to the hospital by the defendant and her mother.

Testimony elicited from the victim revealed that on the day of the assault she was taken by defendant from a neighbor's home on a drive to defendant's brother's house. Along the way, defendant stopped the truck, pulled her pajamas down and placed his finger in her vagina. The victim further testified that defendant placed his penis in her mouth and that he repeated these acts on the drive home from his brother's house. Upon their arrival, defendant bathed the victim and threatened her "not to tell anyone or he would do it again". The victim testified that after she was

taken to the hospital she informed the doctor that she received her injuries from falling on an ashtray because the defendant "told me to say that".

The examining physician, Dr. Timothy Chambers, testified that prior to his examination of the victim he was informed by the defendant that the injuries were sustained when the victim fell against the corner of his vehicle's radio after he slammed on his brakes to avoid a collision. However, the doctor's examination of the victim revealed extensive injuries to the perineum, the area between the rectum and the vagina, which had been torn wide open. The inside of the vagina contained a significant amount of macerated tissue, and multiple tears extending the length of the vagina were discovered. Surgery was performed to repair the injuries to the extent possible. Examination of the victim's head revealed a small bruise on the forehead and a condition known as petechiae, which is caused by a build-up of pressure in the blood vessels of the face, such as would occur as the result of severe screaming or crying. Finally, the witness testified that the victim's vaginal injuries were not compatible with the defendant's version of the incident since her injuries could not have been caused by a sharp instrument, *i.e.,* the corner of a car radio. Rather, the injuries were of the type which would result from the repeated insertion of a blunt instrument into the vagina. Although any blunt object could have been the source, the injuries were compatible with the repeated insertion of an adult penis into the vagina.

Defendant testified in his own defense, admitting that he had taken the victim to his brother's house on the night in question. He left the victim with his brother's children for approximately 40 minutes, then returned to drive her home. On the

way, he hit his brakes, causing her to fall to the floor. When they arrived at home, defendant claimed that he was called to the bathroom and observed that the victim was bleeding. He cleaned her and put her to bed, then waited 10 or 15 minutes for the mother to arrive in order to take her to the hospital. Defendant also testified that he agreed with the medical testimony that the victim's injuries could not have been sustained as the result of her fall in the truck.

On appeal, defendant first complains on hearsay grounds of the admission of certain testimony from Michelle Garden, a protective services worker, and Detective Robert Heikkela of the Michigan State Police. Both witnesses related statements made to them by the victim regarding defendant's perpetration of the assault. We agree that the testimony objected to was not admissible under the "tender years" exception to the hearsay rule since that exception was abrogated by the Michigan Rules of Evidence in 1978. *People v Kreiner,* 415 Mich 372, 377; 329 NW2d 716 (1982). The only question, then, is whether the testimony was admissible under the excited utterance exception, MRE 803(2).

A victim's out-of-court statements are admissible under the excited utterance exception to the hearsay rule where the statements (1) have arisen out of a startling event, (2) were made before there has been time to contrive and misrepresent, and (3) relate to the circumstances of the startling occurrence. *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979). The first and third requirements were indisputably satisfied here, and thus the only question is whether the time lapse between the event and the separate statements to Detective Heikkela and Ms. Garden was of too lengthy a duration to permit satisfaction of the second requirement.

Ms. Garden testified that she spent approximately two hours per day with the victim from December 2nd through the 5th attempting to gain her trust. On December 5, she finally succeeded in convincing the child that defendant could not hurt her anymore, and thus a description of the assault was provided. After reviewing the information, Ms. Garden petitioned the probate court to have the child removed from the home.

Detective Heikkela attempted to interview the victim on December 3, 1980, but could not get her to talk as she was "very distraught, crying, shy, bashful". On December 5, the victim was willing to talk about the incident and describe how she received the injuries. Detective Heikkela testified at trial regarding the statements made to him on December 5.

Generally, a time lapse of five days between the event and the statement would provide more than a sufficient opportunity to contrive and misrepresent an incident, and thus a statement given under such circumstances would clearly be inadmissible. However, where such a heinous assault is committed upon a child so young, it is not beyond reason to suggest that she could remain so traumatized by the incident as to be incapable of contriving or misrepresenting the crimes committed to her person for a period of five days or longer. The testimony of the examining physician revealed that this was not simply a typical pedophilia case, if any such crime could be called typical. Rather, severe injuries were inflicted to the child's genitalia which, aside from the surgery already performed, could require further corrective surgery in the future. We believe the shock which would result from such an assault could easily be of such a duration as to permit the admission of the statements under MRE 803(2).

However, we need not base our rejection of the defendant's argument on the above-stated observation since we conclude that the introduction of the disputed testimony, even if in error, was harmless beyond a reasonable doubt. The nonhearsay evidence connecting defendant with this crime was strong. The victim herself testified at trial and thus supplied the jury with the basic facts establishing the elements of the crime. The medical testimony so strongly contradicted the possibility that the injuries were sustained in a fall from the truck seat that even defendant admitted he did not believe this to be the source. Further, if the assault had been perpetrated by someone at the defendant's brother's house, it seems more than likely that defendant would have noticed a problem at that point, especially in light of the severe bleeding which occurred as a result of the rape. However, defendant admitted that the victim appeared normal before the truck ride home. Based upon this evidence, we have no difficulty concluding that the absence of the hearsay testimony would not have persuaded even one juror to vote for acquittal. Further, since at the time of trial the viability of the tender years exception subsequent to the adoption of the Michigan Rules of Evidence had not yet been resolved by the Supreme Court's decision in *People v Kreiner, supra,* the prosecutor's argument for the applicability of that hearsay exception could not be characterized as "intolerably offensive to the maintenance of a sound judicial system". *People v Gallon,* 121 Mich App 183, 188; 328 NW2d 615 (1982). Therefore, the harmless error rule applies and reversal is not mandated as claimed by defendant.

Next, defendant complains that his constitutional right to remain silent was violated by the following exchange during the prosecutor's exami-

nation of Detective Heikkela. The prosecutor's questioning concerned an interview with the defendant which Detective Heikkela conducted on December 4, 1980:

"*Q.* Did he say anything else to you?
"*A.* I then informed him of the opinion made by the examining physicians, at which time he became somewhat angry and advised he did not want to answer any more questions."

Since the evidence of defendant's refusal to continue the interview with the police was not used to contradict an assertion that a statement was made, the reference to his refusal to answer additional questions was improper under *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). Again, however, we must deem the error harmless. The evidence presented at trial simply did not permit any reasonable conclusion other than that defendant committed the sexual molestation of the victim. Defendant fully admitted that she was in his exclusive care during the time in question, aside from a brief period during which the victim was left with his brother's children. Considering the extensive damage done to the victim's genitalia, it does not follow that she could appear normal prior to the ride home, as testified to by defendant, if she had been molested by the brother's children. We believe that defendant's conviction resulted from the absence of even a remotely viable defense in addition to the direct testimony implicating defendant. Defendant's chances of acquittal without the reference to his refusal to answer further questions, in our opinion, would have been nil. Therefore, the error must be deemed harmless. *People v Gallon, supra,* pp 188-189.

Finally, defendant complains that the trial court abused its discretion in imposing a sentence of life

imprisonment. This case was previously remanded to the trial court by an order dated January 24, 1984, in order to permit an explication of the reasons for imposing a life sentence, as required by *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). In carrying out our remand order, the trial court revealed its awareness of the sentencing considerations, *i.e.,* rehabilitation, punishment, protection of society and deterrence. He then stated:

"I designed this sentence because I became convinced, and am still convinced, that by nature of the personality the defendant has made known to me, the type of crime, the extensive physical damage to a completely helpless person, helpless both physically and mentally, negates the possibility of rehabilitation if in fact that possibility of rehabilitation in a prison setting ever did exist in the first instance. All the other factors are fulfilled by a lengthy sentence. And this sentence is designed so it cannot be altered by the Appeals Court— not the Appeals Court, they can alter it—by the Department of Corrections. If they make any effort to do so, it is subject to my or my successor's ability to stop them. And I think the record here indicates to my successor in office what my feelings are, and hopefully they will be his. And the only way that Mr. Soles can and should be released is by the governor commuting his sentence. And I would hope then that the record itself might influence the governor, should that request be made."

The trial court having complied with the requirement to state on the record the criteria relied upon in imposing the chosen sentence, the only remaining issue is whether the trial court "abused its discretion to the extent that it shocks the conscience" of this Court. *Coles, supra,* p 550. Rather than shocking, we find the sentence to be most appropriate. Therefore, the defendant's conviction and sentence are affirmed.

Affirmed.