PEOPLE v GARLAND

Docket No. 80901. Submitted December 4, 1985, at Lansing. Decided
    June 3, 1986. Leave to appeal applied for.

    Defendant, Gerald R. Garland, was convicted of second-degree
    criminal sexual conduct and absconding in criminal proceed-
    ings, Oakland Circuit Court, Fred M. Mester, J. The victim,
    Jaydeen Garland, was defendant's seven-year-old daughter.
    Defendant appealed. *Held:*

       1. Defendant objected to the admission of statements made by
    Jaydeen to her school teacher and principal on the day follow-
    ing the sexual misconduct incident. The statements were ad-
    missible under the excited utterance exception to the hearsay
    rule. A hearsay statement, to be admissible as an excited
    utterance, must (1) have arisen out of a startling occurrence, (2)
    have been made before there had been any time to contrive or
    misrepresent, and (3) relate to the circumstances of the star-
    tling occurrence. The mere passage of several days from the
    time of the occurrence to the utterance does not negate the
    application of the excited utterance exception to the hearsay
    rule where there is a plausible explanation for the delay. The
    trial court did not abuse its discretion in admitting the state-
    ments.

       2. Defendant objected to the admission of testimony by defen-
    dant's other daughter and stepdaughter about similar acts of
    defendant. Evidence of a criminal defendant's similar criminal
    act may be admitted where (1) there is substantial evidence
    that the defendant actually perpetrated the similar act sought
    to be introduced, (2) some special quality or circumstance of the
    act tends to prove the defendant's identity, or the motive,
    intent, absence of mistake or accident, scheme, plan, or system
    in doing the act, or opportunity, preparation, or knowledge, (3)
    one or more of those factors is material to the determination of
    the defendant's guilt of the charged offense, and (4) the proba-

REFERENCES
Am Jur 2d, Evidence §§ 708, 722, 731.
Am Jur 2d, Witnesses §§ 88-93.
Admissibility, in rape case, of evidence that accused raped or
    attempted to rape person other than prosecutrix. 2 ALR4th 330.

tive value of the evidence substantially outweighs the danger of unfair prejudice. The prior acts were so similar as to establish defendant's scheme, plan or system and were admissible since defendant put in issue his opportunity to commit the offense. The trial court did not abuse its discretion in admitting the testimony.

3. The trial court did not abuse its discretion in refusing to allow defendant to attend an in camera hearing on Jaydeen's competency to testify.

4. The trial court did not commit error in allowing counsel to examine Jaydeen at her competency hearing, since the court conducted its own inquiry and made its own determination.

5. The trial court did not abuse its discretion in allowing the prosecutor to ask Jaydeen leading questions.

6. The prosecutor's arguments to the jury were proper comments on the evidence.

7. The trial court used the proper procedure in departing from the sentencing guidelines and the ten- to fifteen-year sentence for the sexual assault did not shock the judicial conscience.

Affirmed.

WAHLS, J., dissented. He disagreed that Jaydeen's statements to her teacher and principal were admissible under the excited utterance exception to the hearsay rule. He believed that the excitement attending the statements was to response to revealing the secret of the sexual assault and not the sexual assault itself and that there were insufficient circumstantial quarantees of trustworthiness. He also disagreed that the evidence of similar acts was properly admitted. While defendant placed the issue of opportunity to commit the offense in issue, evidence of similar acts committed earlier by defendant was not probative of defendant's opportunity to commit the charged offense. He further believed that the court's limiting instruction did not prevent prejudice from resulting from the improper admission of the evidence. He would reverse.

### OPINION OF THE COURT

1. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A hearsay statement, to be admissible as an excited utterance, must (1) have arisen out of a startling occurrence, (2) have been made before there had been any time to contrive or misrepresent, and (3) relate to the circumstances of the startling occur-

rence; the mere passage of several days from the time of the occurrence to the utterance does not negate the application of the excited utterance exception to the hearsay rule where there is a plausible explanation for the delay (MRE 803[2]).

2. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — RULES OF EVIDENCE.

Evidence of a criminal defendant's similar criminal act may be admitted where (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced, (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge, (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense, and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

3. CRIMINAL LAW — COMPETENCY HEARING — WITNESSES — PRESENCE OF DEFENDANT.

The determination of whether or not to allow a defendant to attend an in camera hearing to determine the competency of a minor to testify is within the discretion of the trial court (MCL 600.2163; MSA 27A.2163).

4. INFANTS — WITNESSES — COMPETENCY.

A court does not commit error in allowing counsel to examine a minor at the minor's competency hearing so long as the court conducts its own inquiry and makes its own determination (MCL 600.2163; MSA 27A.2163).

5. CRIMINAL LAW — LEADING QUESTIONS — TRIAL.

A trial court has discretion to permit the use of leading questions (MCL 768.24; MSA 28.1047).

6. CRIMINAL LAW — PROSECUTORIAL COMMENT.

A prosecutor may properly comment upon the testimony and the demeanor of the witnesses and suggest inferences to be drawn therefrom.

7. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES.

A sentencing judge is permitted to depart from the recommended minimum range imposed by the sentencing guidelines where he follows the departure policy set forth in the guidelines and states the reasons for such departure on the record.

DISSENT BY WAHLS, J.

8. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — RULES OF EVI-
      DENCE.
    *Evidence of similar acts is not admissible to corroborate the
    victim's testimony or to show the defendant to be a bad person;
    where evidence of similar acts is admitted, it must go to show
    some element which is in issue (MRE 404[b]).*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief,
Appellate Division, and *Richard H. Brown,* Assis-
tant Prosecuting Attorney, for the people.

*John D. Lazar,* for defendant on appeal.

Before: CYNAR, P.J., and WAHLS and GRIBBS, JJ.

PER CURIAM. Defendant was convicted by a jury
of second-degree criminal sexual conduct, MCL
750.520c; MSA 28.788(3), and of absconding in
criminal proceedings, MCL 750.199a; MSA
28.396(1). He was sentenced to concurrent prison
terms of from ten to fifteen years and two to four
years. Defendant appeals as of right.

Defendant was charged with sexually assaulting
his seven-year-old daughter, Jaydeen, on January
7, 1982, by touching her vaginal area. At trial it
was established that in January, 1982, Jaydeen
was attending school for the educable mentally
impaired and that she functioned very low aca-
demically. She was twice determined prior to trial
to be incompetent to testify. However, following a
third pretrial hearing, the district court judge
found her competent to testify at trial. At an in
camera proceeding, the trial court likewise con-
cluded that Jaydeen was able to understand the
difference between truth and falsehood and quali-
fied her as a witness.

Jaydeen testified that on January 7, 1982, she

and defendant took a bath together and then defendant put his finger in her vagina. On cross-examination, Jaydeen denied that she had been home alone with her father and both admitted and denied that defendant had touched her vagina. Prior to her testimony, Jaydeen's school teacher and school principal testified as to Jaydeen's statements made to them on the day following the incident.

The witnesses testified that on January 8, 1982, Jaydeen and a young boy were found exposing themselves underneath a cement turtle on the school playground. When the witnesses confronted the children, Jaydeen blurted out that she would not take the boy out to "play games" like she and her father did anymore. When questioned about the "games," Jaydeen responded that she and her father would go up and down in a chair together, would take baths together, and lie in bed and look at pictures of naked women. When asked if her father touched her, Jaydeen responded yes and pointed to her vaginal area. Jaydeen told them that the "games" had occurred the preceeding evening when her mother and sisters were gone. Both witnesses testified that Jaydeen became progressively more excited and upset as the questioning continued. After the conversation, the principal called protective services and charges were eventually brought against defendant.

The testimony of Lynett Purdy, Jaydeen's half sister and defendant's stepdaughter, and the testimony of Sherry Bishop, defendant's natural daughter, were admitted under MRE 404(b) to show defendant's scheme, plan or system. Purdy was fourteen years old and Bishop was twenty-one at the time of trial. Both witnesses testified that, when they were young, defendant had engaged in what he called "games" with them. Purdy recalled

that she would sit naked in chairs with defendant until he ejaculated, they would shower together and lie in bed together and look at pictures of naked women. Bishop testified to similar episodes.

In his defense, defendant presented the testimony of Helen Garland, his present wife and Jaydeen's stepmother, and Heidi and Susan Vincent, Helen's daughters and defendant's stepdaughters. They testified that on January 7, 1982, Jaydeen was not left home with defendant but that she had gone to K-mart with her stepmother and stepsister. When they returned, Helen Garland and defendant went to the movies while Susan Vincent gave Jaydeen a bath and put her to bed.

Defendant raises several issues on appeal, the first of which involves the admission of the testimony of the school teacher and principal relating to Jaydeen's statements. The court admitted the statements under the excited utterance exception to the hearsay rule. MRE 803(2). In order for Jaydeen's statement to be admissible under this exception, her statement must (1) have arisen out of a startling occurrence, (2) have been made before there had been any time to contrive or misrepresent, and (3) relate to the circumstances of the startling occurrence. *People v Gee,* 406 Mich 279; 278 NW2d 304 (1979). The determination of whether the statement is admissible as an excited utterance is within the trial court's discretion. *People v Lobaito,* 133 Mich App 547; 351 NW2d 233 (1984).

While it is arguable that the startling event which provoked Jaydeen's statement was the playground incident, we are not convinced that the sexual assault of the previous evening was not causally connected.

Although Jaydeen did not immediately report

the assault either that evening or early the following morning, this Court has previously found that an overnight delay or even a delay of several days does not negate application of the excited utterance exception if there was a plausible explanation for the delay. See *People v Soles,* 143 Mich App 433; 372 NW2d 588 (1985); *People v Cobb,* 108 Mich App 573; 310 NW2d 798 (1981); *In the Matter of Meeboer,* 134 Mich App 294; 350 NW2d 868 (1984). Here the victim was a seven-year-old child of limited mental ability. Furthermore, the defendant had apparently threatened his daughter not to tell anyone of the "games." These circumstances make it unlikely that Jaydeen would have contrived or misrepresented the sexual matters and provide a plausible explanation for the delay. *Meeboer, supra.* We conclude that the trial court did not abuse its discretion in admitting the statement.

Defendant next claims that the trial court erred by refusing to exclude the similar-acts testimony of Lynett Purdy and Sherry Bishop. MRE 404(b) and MCL 768.27; MSA 28.1050 allow the admission of similar-acts testimony under limited circumstances. Whether or not to admit the testimony is within the trial court's discretion. *People v Alexander,* 142 Mich App 231; 370 NW2d 8 (1985). *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982), set forth the requirements which must be met before such evidence may be introduced:

   (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the

slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of the factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice.

After applying the test to the facts at hand, we find no abuse of discretion by the trial judge in allowing the testimony to be presented to the jury.

The crux of defendant's claim is that the testimony was not material to a determination of guilt and that it failed to show a common scheme. We disagree. Not only did the witnesses testify to defendant's use of the term "games" but each witness also described remarkably similar conduct. Moreover, each testified that the episodes occurred when they were prepubescent. Accordingly, we believe that the prior acts were so similar that they established defendant's scheme, plan or system in engaging in the misconduct. Since defendant put into issue his opportunity to commit the offense, the testimony was admissible to show his method or system of committing the acts. Finally, we note that the trial court instructed the jury as to the limited purpose of admitting the similar-acts evidence. Under these circumstances, we are not persuaded that the admission was an abuse of discretion.

Neither do we believe that the Supreme Court's decision in *People v Jones,* 417 Mich 285; 335 NW2d 465 (1983), mandates a different conclusion. Unlike the prior-acts testimony in *Jones,* the evidence in the instant case was admitted only under a similar-acts analysis. The Supreme Court recognized that evidence of prior sexual acts between a

defendant and others could be admissible on this basis. 417 Mich 290, n 1.

Defendant also contends that error occurred when the trial court excluded him from the in camera competency hearing. MCL 600.2163; MSA 27A.2163 provides that an examination of a child may be made either "publicly, or separate and apart." As defense counsel acknowledged on the record, this determination is within the discretion of the court. We do not dispute that defendant has a right to be personally present during any stage of the proceedings when his substantial rights may be adversely affected. *People v Mallory,* 421 Mich 229, 247; 365 NW2d 673 (1984); MCL 768.3; MSA 28.1026. Nonetheless, we do not believe that defendant's absence from the in camera hearing which was strictly limited to the issue of competency adversely affected his substantial rights.

We likewise reject defendant's claim that it was error to permit both attorneys to examine the witness during the hearing. The statute does not proscribe the parties from questioning the witness but only requires that the court conduct its own inquiry and make its own determination. MCL 600.2163; MSA 27A.2163. A review of the record reveals that this requirement was met.

Finally, we note that defendant failed to object to the court's determination to qualify the child as a witness. Defendant's failure to object to the admission of the testimony waived his right to assert this error on appeal. *Cobb, supra.*

Next, defendant asserts that the prosecutor impermissibly led Jaydeen during his examination of the witness. The trial court has discretion to permit the use of leading questions. MCL 768.24; MSA 28.1047. Given the witness's age, mental abilities and the nature of the offense, we are not

persuaded that the use of leading questions was improper.

We are equally unpersuaded that the prosecutor's comments during closing or rebuttal argument were improper and require reversal. Defendant failed to object to any comments during closing argument and his objections during rebuttal were limited to charges of facts not in evidence. After each objection, the court duly instructed the jury that they were to judge the facts. Moreover, our review of the record indicates that, in both closing and rebuttal argument, the prosecutor was merely commenting on the evidence and the demeanor of the witnesses and the inferences which could be drawn therefrom. His comments were within the ambit of proper closing argument. *People v Buckey,* 424 Mich 1; 378 NW2d 432 (1985); *People v Jancar,* 140 Mich App 222; 363 NW2d 455 (1985). Defendant cannot claim error merely because the testimony of the witnesses was emotional and sympathetic.

Because we do not find that any errors occurred in the conduct of the trial, we do not believe that defendant was denied a fair and impartial trial.

Defendant's final issue concerns the court's departure from the sentence recommended by the Michigan sentencing guidelines. In articulating its reasons for departure, the trial court explained that the guidelines did not adequately meet the requirements of the case because defendant's sexual activities were of an ongoing nature, the victim was young and she experienced emotional difficulties. These reasons were sufficient to satisfy the departure policy set forth in the guidelines. Administrative Order 1984-1, 418 Mich lxxx (1984); *People v Kenneth Johnson,* 144 Mich App 125; 373 NW2d 263 (1985); *People v Fleming,* 142 Mich App 119; 369 NW2d 499 (1985). Neither does the ten- to

fifteen-year sentence imposed on defendant for sexually assaulting his seven-year-old daughter shock our judicial conscience. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Affirmed.

WAHLS, J. *(dissenting).* I respectfully dissent because I find that two errors occurred requiring reversal. First, I cannot agree that Jaydeen's statements to her school teacher and principal were excited utterances. Second, I do not believe that the testimony of Jaydeen's half sisters should have been admitted under the similar-acts exception.

I

In *People v Ivory Thomas,* 14 Mich App 642, 650-651, n 3; 165 NW2d 879 (1968), Justice (then Judge) LEVIN, concurring, noted that appellate courts were not ready to give up entirely their supervision of trial courts, although Professors Wigmore and McCormick had recommended that appellate courts leave the excited utterance exception to the discretion of the trial judge in each case. Our ongoing supervision over admission of statements as excited utterances is apparent in cases such as *People v Creith,* 151 Mich App 217; — NW2d — (1986); *People v Pullins,* 145 Mich App 414; 378 NW2d 502 (1985); *People v Petrella,* 124 Mich App 745; 336 NW2d 761 (1983), aff'd on other grounds 424 Mich 221; 380 NW2d 11 (1985); *People v Carner,* 117 Mich App 560; 324 NW2d 78 (1982). See also *People v McConnell,* 420 Mich 852; 358 NW2d 895 (1984); *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982), reh den 417 Mich 1104 (1983).

I think the need for supervision is especially important in a case like this where we have state-

ments by a very young victim of a sexual offense. Less than three and one-half years ago, these statements would generally have been considered admissible pursuant to the "tender years" exception to the hearsay rule. Indeed, in this case, the admissibility of Jaydeen's statements to her teacher was argued as early as July 16, 1982, at the preliminary examination, and the prosecution relied heavily on the tender years exception. However, on February 18, 1983, when the Supreme Court denied rehearing in *Kreiner, supra,* all courts in this state became bound by the Supreme Court's decision that the tender years exception did not survive the adoption in 1978 of the Michigan Rules of Evidence.

The hearsay exceptions in MRE 803 exist because it is believed that the exceptions have indicia of trustworthiness justifying admission of the hearsay. In contrast to MRE 803, the Federal Rules of Evidence have a "catchall" provision, FRE 803(24), which allows the court to admit hearsay not specifically excepted but which has adequate indicia of trustworthiness. In *Kreiner,* the Supreme Court did not overrule the long-standing view that the tender years exception has indicia of trustworthiness, but the Court concluded that MRE 803 does not leave room for the courts to create exceptions beyond those specifically enumerated. I am inclined to believe that cases like the instant one are explainable, at least in part, as reflecting dissatisfaction with the artificial limitations of MRE 803 and specifically subrule (2). I also believe, based on a review of the preliminary examination and the arguments raised during the motion in limine, that there was confusion in this case about the distinction between the tender years exception and the excited utterance exception of MRE 803(2).

The trial court did not explain its ruling, so we cannot know its mental processes in reaching its finding of admissibility. Looking to the record, I cannot find the evidentiary support to sustain its ruling. What I find is evidence of spontaneity and of absence of manufacture and a reasonable explanation for Jaydeen's delay in making her statement. Those findings establish a classic case for application of the tender years exception.

In *People v Baker,* 251 Mich 322, 326; 232 NW 381 (1930), the Supreme Court said of the tender years exception:

> An assault made by the father of the victim and his admonition to her not to tell what had happened are as effective to promote delay as threats by a stranger would have been. A child would ordinarily have no sense of outrage at such acts by her own father, and complaining of them would not occur to her. Her telling of the affair would more naturally arise as the relation of an unusual occurrence and might be delayed until something arose to suggest it.

This quote perfectly summarizes the instant case. From the teacher's testimony at the preliminary examination, it is apparent that the January 7 offense was not the first, but one of probably many such occurrences. Further, it does not appear that defendant threatened Jaydeen, but rather that he told her that they had a secret which she was not to share with others. Only at trial, after the court had ruled that the statements were admissible, did the teacher and principal state that Jaydeen was excited, and it appears that this excitement was a response to revealing the "secret" and not to the sexual assault itself.

The prosecutor argued strongly during the motion hearing that Jaydeen delayed telling her

story because she was fearful. The record simply does not support this claim. An argument can be made that Jaydeen was fearful of her father at the preliminary exam, but such a conclusion is tenuous indeed. In response to leading questions by the prosecutor, Jaydeen apparently admitted that she was afraid of defendant. The admission followed very shortly after Jaydeen, in a conversation with the judge about eating fish during a recess, said, "Did Jay [defendant]? Daddy, I'm going to tickle you." This impulsive remark to her father hardly reflects fear. In any event, the evidence of fear at the preliminary exam is not probative of fear following the sexual assault. Without evidence of excitement or stress resulting from the sexual assault and existing at the time Jaydeen made the statements to her teacher and principal, I cannot find that the foundation for admission pursuant to MRE 803(2) has been established. *Kreiner, supra,* p 379 and n 8.

The majority says that Jaydeen had limited mental ability. At the preliminary exam, the testimony was to the effect that she was educationally mentally impaired, probably for emotional rather than intellectual reasons. The cause of her emotional problems was not established, and it is mere speculation whether they arose because defendant sexually abused her, or because of her mother's divorce from defendant years earlier, or because of some other reason. Jaydeen's teacher described Jaydeen as an impulsive child, who made up stories. The teacher said that she could tell when Jaydeen was lying because Jaydeen would laugh and then back down when challenged. The teacher stated, by way of example, that one day Jaydeen came to school and said she had just been to the zoo. That the teacher believed she could tell when Jaydeen was lying and believed that Jaydeen's

statements about defendant assaulting her were true is some indication that Jaydeen's statements are trustworthy. However, this circumstantial guarantee of trustworthiness does not, in my view, satisfy the criteria of MRE 803(2).

Jaydeen's hearsay statements as testified to by her teacher and principal were the heart of the prosecution's case. Their erroneous admission was clearly prejudicial. I would reverse.

II

While the prosecutor followed the criteria set forth in *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982), it is clear that neither the prosecutor nor the trial court paid heed to the Supreme Court's discussion in that case about admitting similar-acts testimony pursuant to MRE 404(b). At the expense of brevity, I believe the comments of Justice RYAN, writing for the Court, are worth setting forth at some length:

> . . . Usually, only one among the several purposes described in the rule is material to the case and justifies admission of such evidence. Consequently, if the prosecutor does not announce the purpose for which the evidence is offered, the trial judge should require the prosecutor to identify the specific basis in the rule justifying its admission: to show motive, opportunity, knowledge, preparation, intent, the absence of mistake or accident on the part of the defendant, or to prove the defendant's scheme, plan or system in doing an act, or because scheme is itself directly material, or because it tends to prove the defendant's identity as the perpetrator of the crime in question.
>
> Experience in the trial courtroom and review of trial records on appeal suggests rather incontrovertibly that, when asked by the trial judge to specify the grounds for admission of similar-acts

evidence, prosecutors often loose a "shotgun" fusillade of reasons which typically include most, if not all, of the purposes named in the statute. Such a response hints, of course, if it does not demonstrate, that the prosecutor has an inadequate understanding of the correct application of the rule and is unclear as to precisely why the evidence is or is not admissible.

Similarly, trial judges, when admitting evidence of other crimes, should avoid doing so with the vague justification that "I'll let it in for what it is worth," or "I'll allow it to show plan, scheme or system" when that is the basis suggested by the prosecutor, without requiring a showing by the prosecutor as to how such evidence is relevant to show plan, scheme or system, or how plan, scheme or system is material to the case, or, most importantly, whether the evidence, if indeed relevant and material, is not more unfairly prejudicial than probative of the proposition for which it is offered.

As we have said before, evidence of other misconduct is not admissible in this state to negate mistake or accident, to prove motive, to show intent, to demonstrate the defendant's plan, scheme or system, or to prove his identity, unless one or more of those factors are genuinely in issue —not "in issue" in the sense that criminal intent, identity, motive, lack of accident or some criminal plan are nearly always in issue to some greater or lesser degree in every case, but in issue or "material" in the sense that they are genuinely controverted matters. A genuine controversy exists concerning such matters when the defendant, either by counsel's opening statement, a motion *in limine,* the nature of cross-examination by the defense, or evidence offered by the defense, has made one or more of them and issue actually disputed in the case. [Footnote omitted. 413 Mich 314-316.]

In this case, the prosecutor argued that the similar-acts testimony was admissible to show opportunity (in light of defendant's alibi defense), to show preparation, scheme, plan or a system in

doing an act, as material to Jaydeen's credibility, and to show absence of accident or mistake. The prosecutor also argued that the evidence was more probative than prejudicial because it corroborated Jaydeen's statements and the evidence that she had symptoms of a sexually abused child. The trial court ruled that the similar-acts testimony was admissible "based upon the uncontroverted statement by the prosecutor that there was a tape recorded statement to a police officer by Mr. Garland denying the act and explaining that Jaydeen was an intelligent, sexually active child who makes things up." While identifying the record support for its ruling, the court's statement does not indicate for which purpose provided in MRE 404(b) the testimony was admitted. I cannot find a proper purpose on my review of the record.

Identity, intent and absence of mistake were not in issue in this case. Either defendant committed a crime on January 7, 1982, or no one did. Either a crime was committed or nothing happened. Because the above are not in issue, preparation, scheme, plan or system must be directly in issue to be admissible. *Golochowicz, supra,* pp 313-314. The majority correctly states that defendant put in issue his opportunity to commit the offense. The defense, offered through defendant's wife and two of his daughters, was that defendant was not alone with Jaydeen during the evening of January 7, 1982. However, the testimony of two different daughters that he had abused them *years earlier* was not probative of defendant's opportunity to abuse Jaydeen on January 7, 1982. The issue in this case was who to believe, Jaydeen or defendant. In such a case, similar-acts testimony will do one or both of two things—corroborate the victim's testimony and show the defendant to be a person of bad character. The latter effect is what MRE

404(b) expressly seeks to prevent; the former is prohibited by *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), as clarified in *People v Jones,* 417 Mich 285; 335 NW2d 465 (1983). I do not believe that the trial court's limiting instruction prevented the prejudice resulting from the erroneous admission of the similar-acts testimony.

I would reverse.