# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

SANTEZ MAURICE JONES,

        Defendant-Appellant.

UNPUBLISHED
September 1, 2015

No. 320325
Wayne Circuit Court
LC No. 13-007138-FC

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of first-degree criminal sexual conduct, MCL 750.520b (multiple variables), and second-degree criminal sexual conduct, MCL 750.520c(1)(a) (victim under 13 years old, defendant over 17 years old). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for both convictions. We affirm.

This appeal arises out of defendant's sexual assault of TB, the victim. TB alleged that she was first assaulted by defendant when she was eight years old. On that occasion, defendant was babysitting TB at her house. TB and defendant were in the basement, lying on a bed, when defendant put his hand on TB's buttocks.

TB alleged that the second incident of sexual conduct occurred when she was 14 years old. On that occasion, TB was at her sister's house and wanted to go to bed. Defendant, who also lived at that home, told TB to go to bed in his room. TB went into defendant's room, laid down on an air mattress, and fell asleep. TB was not wearing underwear when she went to bed. After TB went to bed, defendant went into the room where TB was sleeping. At some point, TB woke up and defendant was on top of her with his penis in her vagina. TB testified that it hurt when defendant penetrated her. After TB awoke, defendant told her to "scoot this way," but TB instead got up out of the bed and went into the living room. TB testified that defendant was not wearing a condom at this time, but she was unsure if he ejaculated during the assault.

When TB entered the living room, she saw her mother's friend lying on a bed. TB laid down next to the friend and whispered, "[Defendant] tried to stick his penis in me." During their conversation, the friend told TB to tell her sister what had happened if defendant had actually performed the act that TB described. TB got up and went into her sister's room. Her sister was asleep in her bed with her boyfriend. TB woke her sister and told her that "[defendant] stuck his

penis" in TB's vagina. Her sister testified that TB whispered the statement and appeared "kind of scared to tell [her]." In response, TB's sister drove TB to their mother's house, which was approximately five minutes away. TB's sister dropped off TB, and when her sister returned to her own house, she woke defendant. TB's sister asked defendant if he put his penis in TB's vagina, and defendant said, "I don't remember doing it," but "I need to pay for it if I did."

After arriving at her mother's house, TB told her mother that "[defendant] stuck his stuff in me." However, TB's mother said that she was too tired to deal with this situation at the moment, and that TB should call her father. TB called her father, who did not live with her mother, and told him over the phone that "[defendant] raped me." TB had blood coming out of her vagina. The blood was not menstrual blood because TB had just ended her period. TB's father got out of bed, got dressed, and drove to see TB. TB was taken to the hospital where she underwent an examination. An analysis of the vaginal swabs taken from TB's body shortly after the assault showed that defendant's DNA was a match at three of the 16 locations that were tested, and he could not be excluded as a donor at 10 of the other locations.

At trial, the mother's friend, TB's sister, TB's mother, and TB's father all testified regarding the statements TB made to them. Further, Jessica Drager testified, as an expert in DNA analysis, that, according to a report authored by a forensic analyst named Billie Hooker, sperm cells were found on the vaginal and cervical swabs. At the conclusion of the evidence, the trial court stated that it found TB credible and, therefore, found defendant guilty of first-degree criminal sexual conduct and second-degree criminal sexual conduct. Defendant was subsequently sentenced to 15 to 30 years' imprisonment for both convictions on January 24, 2014.

On December 23, 2014, defendant filed a motion in this Court to remand for a *Ginther*[1] hearing. On January 30, 2015, this Court entered an order denying defendant's motion to remand because defendant did not properly demonstrate that further factual development was necessary. *People v Jones*, unpublished order of the Court of Appeals, entered January 30, 2015 (Docket No. 320235).

On appeal, defendant argues that he was denied the effective assistance of counsel due to defense counsel's failure to object to various hearsay statements. We disagree.

Generally, whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because defendant did not move for a new trial in the trial court on the basis of ineffective assistance of counsel, and further, because no *Ginther* hearing has been held, our review of this issue is limited to mistakes apparent on the record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *Trakhtenberg*, 493 Mich at 51. To establish ineffective assistance of counsel, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "[A] defendant [is] prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id.* at 81. "Effective assistance of counsel is presumed, and [a] defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). "A defendant must [also] overcome a strong presumption that the assistance of his counsel was sound trial strategy . . . ." *People v Sabin*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "Counsel is not required to raise meritless or futile objections . . . ." *Eisen*, 296 Mich App at 329 (quotation marks and citation omitted).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls under an exception provided by the rules of evidence. MRE 802. The excited utterance exception permits the admission of hearsay statements that (1) arise out of a startling event, and (2) are made while the declarant was under the excitement caused by that event. MRE 803(2); *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). The focus of the excited utterance rule is the "lack of capacity to fabricate, not the lack of time to fabricate," and the relevant inquiry is one concerning "the possibility for conscious reflection." *People v Smith*, 456 Mich 543, 550-551; 581 NW2d 654 (1998). As such, "[t]hough the time that passes between the event and the statement is an important factor to be considered in determining whether the declarant was still under the stress of the event when the statement was made, it is not dispositive." *Id* at 551. "The pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *People v McLaughlin*, 258 Mich App 635, 659-660; 672 NW2d 860 (2003).

Defendant first contends that defense counsel was ineffective for failing to object to the testimony provided by the mother's friend that TB whispered to her immediately after the incident that "[defendant] tried to stick his penis in [TB]." However, it is apparent that TB's statement was an excited utterance, arising out of the startling event of TB being awakened by defendant lying on top of her with his penis inside her vagina. The trial court found that TB was under "distress and fear" when she whispered the statement to the friend, establishing that TB was under the excitement caused by that event when she made her statement. Further, given the finding that TB was under distress and was fearful, the record indicates that she lacked the capacity to fabricate her statement to the friend. Thus, any objection that the statement was inadmissible hearsay would have been meritless. Because counsel is not required to make a meritless objection, *Eisen*, 296 Mich App at 329, counsel's performance did not fall below an objective standard of reasonableness.

Defendant next argues that defense counsel was ineffective for failing to object when TB's sister testified that TB told her that "[defendant] had stuck his penis inside [TB]." Similar to TB's statement to her mother's friend, the record indicates that TB's statement to her sister was made while TB was still under the stress of the startling event and lacked the capacity to

-3-

fabricate, as her sister testified that TB was whispering when she made the statement and appeared "kind of scared to tell [her sister]." Thus, TB's statement to her sister was also admissible as an excited utterance, and any objection that the statement was inadmissible hearsay would have been meritless. As stated above, ineffective assistance of counsel cannot be predicated on the fact that counsel did not raise a meritless objection. *Id.* Therefore, defense counsel's failure to object to her sister's testimony did not constitute ineffective assistance of counsel.

Defendant also asserts that defense counsel was ineffective for failing to object when TB's mother testified that TB told her that "[defendant] stuck his stuff in me." We conclude that this statement also constituted an excited utterance. TB made the statement shortly after the startling event, and TB's mother described TB's condition as "hysterical, she was crying." Although several minutes had passed between TB's statement to her sister and TB's statement to her mother, we find that the testimony provided by TB's mother regarding TB's demeanor demonstrates that TB made the statement while she was still under the excitement, and overwhelmed by the stress, caused by the event. See *Smith*, 456 Mich at 545, 552-553 (concluding that a statement made by a sixteen-year-old victim to his mother 10 hours after the sexual assault constituted an excited utterance in light of the circumstances preceding and surrounding the statement, which demonstrated that the victim was still overwhelmed by the stress of the event). Cf. *People v Kowalak*, 215 Mich App 554, 557; 546 NW2d 681 (1996) (concluding that a statement made by an adult victim approximately 45 minutes after the startling event constituted an excited utterance under the circumstances); *People v Draper*, 150 Mich App 481, 486; 389 NW2d 89 (1986) (concluding that a statement made by a three-year-old victim one week after a sexual assault constituted an excited utterance under the circumstances), remanded on other grounds 437 Mich 873 (1990); *People v Soles*, 143 Mich App 433, 435, 438; 372 NW2d 588 (1985) (concluding that statements made by a six-year-old victim five days after a "heinous" sexual assault constituted an excited utterance under the circumstances). Likewise, there is nothing in the record which suggests that TB had an opportunity for conscious reflection during the short ride in the car, such that TB was no longer overwhelmed, or had the capacity to fabricate her statement, when she arrived at her mother's house. Thus, TB's statement to her mother was also admissible as an excited utterance, and any objection would have been meritless. See *Eisen*, 296 Mich App at 329.

Defendant also claims that defense counsel was ineffective for failing to object when TB's father testified that TB stated that "[defendant] raped [her]." After TB's mother told TB to call her father, TB told him that "[defendant] raped [her]." TB's father testified that when TB told him what defendant had done, TB was "hysterical, crying." Thus, TB's statement to her father was made while she was under the excitement caused by that event and while she still lacked the capacity to fabricate her statement to her father. Likewise, in light of her father's testimony regarding TB's demeanor, we find that the additional passage of time before TB made the statement to her father does not preclude a finding that the statement was an excited utterance. See *Smith*, 456 Mich at 545, 552-553. Cf. *Kowalak*, 215 Mich App at 557; *Draper*, 150 Mich App at 486; *Soles*, 143 Mich App at 435. Thus, because there is an evidentiary basis for finding that TB's statement to her father qualified as an excited utterance, any objection that the statement was inadmissible hearsay would have been meritless. Because counsel is not required to make a meritless objection, *Eisen*, 296 Mich App at 329, counsel's performance did not fall below an objective standard of reasonableness in this regard.

Furthermore, even if defense counsel's failure to object to TB's statements to her mother and father arguably fell below an objective standard of reasonableness in light of the period of time that had passed following the assault, there is not a reasonable probability that this failure to object affected the outcome of the proceedings in light of the entire record. TB's statement to her mother was cumulative to her own testimony at trial and her statements to her mother's friend and her sister, which were properly admitted as excited utterances. Cf. *Smith*, 456 Mich at 554-555 (concluding that, if the admission of the victim's hearsay statement was erroneous, the error was harmless because it did not prejudice the defendant in light of the victim's testimony and the mother's additional testimony). Thus, defense counsel's failure to object to these statements did not constitute ineffective assistance of counsel. *Heft*, 299 Mich App at 80-81.

Lastly, defendant contends that counsel was ineffective for failing to object to Drager's expert testimony during which she stated that, according to scientist Hooker's report, sperm cells were found on one of the vaginal slides. Defendant contends that trial counsel should have objected because the hearsay testimony violated the Confrontation Clause.

"Both the United States and Michigan [C]onstitutions guarantee a criminal defendant the right to confront the witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009), citing US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clause prohibits the admission of out of court statements that are testimonial in nature unless the declarant was unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A report "prepared in connection with a criminal investigation or prosecution . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause." *Bullcoming v New Mexico*, __ US __; 131 S Ct 2705, 2713-2714; 180 L Ed 2d 610 (2011), citing *Melendez-Diaz v Massachusetts*, 557 US 305, 319-324; 129 S Ct 2527; 174 L Ed 2d 314 (2009). In the instant case, Hooker's report was prepared in connection with a criminal investigation or prosecution because the DNA analysis was required to determine if the allegations that defendant penetrated TB were true. Thus, Hooker's report is testimonial, which implicates the Confrontation Clause. *Id*.

In *Bullcoming*, 131 S Ct at 2710, the United States Supreme Court was required to determine whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report through the in-court testimony of a scientist who did not sign the report or perform or observe the test reported. The defendant had rear-ended a pick-up truck. *Id*. When the truck driver got out of his truck to exchange information with the defendant, the truck driver smelled alcohol on the defendant's breath and noticed that the defendant's eyes were bloodshot. *Id*. The defendant was subsequently arrested for driving a vehicle while under the influence of intoxicating liquor. *Id*. The police obtained a warrant authorizing a blood-alcohol analysis and, pursuant to the warrant, a sample of the defendant's blood was drawn at a local hospital. *Id*. The sample of the defendant's blood was sent to the Scientific Laboratory Division of the New Mexico Department of Health (SLD). *Id*. Curtis Caylor, a SLD forensic analyst, created a report that stated that the defendant's blood-alcohol content was .21 grams per one 100 milliliters of blood. *Id*. On the day of trial, the prosecution informed the defendant that the prosecution would not be calling Caylor as a witness because he was recently placed on unpaid leave. *Id*. at 2711-2712. The prosecution presented evidence of Caylor's report as a "business record" through the testimony of Gerasimo Razatos, an SLD scientist. *Id*. at 2712.

The United States Supreme Court held that Razatos's "surrogate testimony" violated the Confrontation Clause because Razatos "could not convey what Caylor knew or observed about the events" his report concerned. *Id*. at 2710, 2715-2716. The United States Supreme Court also held that the Confrontation Clause does not permit the prosecution to introduce a forensic laboratory report through the in-court testimony of a scientist who did not sign the report or perform or observe the test reported, unless the analyst who made the report is unavailable at trial and the accused had an opportunity to cross-examine that particular scientist. *Id*. at 2710.

Similar to Rozatos in *Bullcoming*, Drager's "surrogate testimony" could not convey what Hooker knew or observed regarding the matters discussed in the report. There is no indication that Drager signed the report or performed or observed the test which determined that sperm cells were on the vaginal slide. There is no indication that Hooker was unavailable at trial.[2] Additionally, defendant did not have the opportunity to previously cross-examine Hooker. Because the Confrontation Clause does not permit the prosecution to introduce a forensic laboratory report through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported, unless the analyst who made the report is unavailable at trial and the accused had an opportunity to cross-examine that particular scientist, *id*. at 2710, there is a reasonable probability that an objection to Drager's testimony on Confrontation Clause grounds would have been successful.

However, even if we assume that failing to raise an objection to the admission of the contents of the report without the in-court testimony of Hooker fell below an objective standard of reasonableness, there is not a reasonable probability that defense counsel's performance prejudiced defendant, i.e., that the result of the proceeding would have been different but for defense counsel's error. *Heft*, 299 Mich App at 80-81. Most significantly, it is evident from the trial court's findings on the record that the court did not rely on the presence of sperm cells on the vaginal slide in reaching its verdict. Instead, it focused on the testimony provided by TB, repeatedly stating that it found TB to be a credible witness, and the testimony provided by the other witnesses, which corroborated TB's account of the incident. Moreover, TB's testimony—which indicated that when she woke up, defendant was on top of her with his penis in her vagina—was sufficient on its own to support defendant's first-degree criminal sexual conduct conviction, as the testimony of a victim in a criminal sexual conduct case need not be corroborated in order to sustain such a conviction. MCL 750.520h; *People v Brantley*, 296 Mich App 546, 551; 823 NW2d 290 (2012). Additionally, regardless of the findings in Hooker's report, Drager, who performed the DNA analysis, testified that the DNA found on the vaginal slide from TB matched defendant's DNA at three of the 16 locations that were tested. Thus, given the trial court's findings and the evidence presented at trial, there is not a reasonable probability that the outcome of the proceeding would have been different but for defense

---

[2] Hooker was an endorsed witness; however, defense counsel subsequently waived the production of Hooker for the purpose of establishing a chain of custody for the contents of the rape kit. Although defense counsel waived the production of Hooker, when the prosecution elicited testimony from Drager regarding the contents of Hooker's report, Hooker became a witness that defendant had the right to confront. *Bullcoming*, 131 S Ct at 2716.

counsel's failure to object to the contents of the report prepared by Hooker. Accordingly, defendant's claim of ineffective assistance must fail.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly